The HOME INSURANCE COMPANY,
Plaintiff-Appellee,

v.

The AETNA CASUALTY AND SURE-
TY COMPANY and Diamond Sham-
rock Corporation, Defendants-Appel-
lants.

Nos. 319, 320, Dockets 75–7357, 75–7359.

United States Court of Appeals,
Second Circuit.

Argued Dec. 9, 1975.

Decided Jan. 13, 1976.

Robert A. Dwyer, New York City (J. Robert Morris, New York City, of counsel), for appellant Aetna.

Horace P. Moulton, New York City (P. Jay Flocken, Thomas E. Moseley, Cadwalader, Wickersham & Taft, New York City, of counsel), for appellant Diamond Shamrock.

Philip D. Pakula, New York City (Townley, Updike, Carter & Rodgers, New York City, of counsel), for plaintiff-appellee.

Before KAUFMAN, Chief Judge, and SMITH and MESKILL, Circuit Judges.

PER CURIAM:

Appellee, the Home Insurance Company ("Home"), sought a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 to determine the extent of its liability to indemnify its insured, appellant Diamond Shamrock Corporation ("Diamond"). Jurisdiction was based on diversity of citizenship. Agreeing that no genuine issue of material fact existed, both sides moved for summary judgment. The district court granted plaintiff's motion, ruling that the interpretation of a contract was a question of law for the court and that extrinsic evidence offered by the defendants as to the contractual intent of the parties and the custom of the insurance industry was to be excluded from consideration. We reverse the granting of summary judgment in this case.

The facts leading up to the insurance claim are not in dispute. Diamond produces superconcentrated Vitamin D3 resin at its plant in New Jersey. The resin is melted to form a blend, some of which

is sold in that form, some of which is mixed in corn oil and sold, and some of which is mixed with corn oil and shipped to Diamond's plants in Kentucky, Arkansas, and California, for the production of dry Vitamin D3 concentrates. As a result of production errors made at the New Jersey plant, two lots of inactive superconcentrated Vitamin D3 resin were produced, mixed with corn oil and antioxidants, and shipped to Diamond's Kentucky plant where they were sprayed onto corn cob fractions to make four lots of Nopdex "200," a livestock food supplement. Diamond sold the four lots to Central Soya Corporation ("Central Soya") which used them in making chicken feed. Central Soya sold the feed to numerous chicken farmers who ultimately suffered damages when their poultry's ingestion of the defective feed resulted in various afflictions, some resulting in death. Diamond concedes its liability to Central Soya for damages paid to the farmers.

Diamond was insured during this period by both appellant Aetna Casualty and Surety Company ("Aetna") and Home. The Aetna "Underlying Policy" insured against liability for damage to the property of others up to $250,000 per occurrence, subject to a deductible of $100,000 per occurrence. The number of occurrences is dependent on two provisions in the policy. The first is the definition of "occurrence": " 'Occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Endorsement # 33 to the policy, known as a "batch clause," provided in part:

" * * * as respects products liability for * * * property damage coverage:

"All such damage arising out of one lot of goods or products prepared or acquired by the named insured or by another trading under his name shall be considered as arising out of one occurrence."

The Home "Excess Policy" insured Diamond for liability for property damage in excess of that covered by the Aetna Underlying Policy, up to $3,000,000 per occurrence; "occurrence" was defined as in the Aetna policy.

The parties to this action disagree over the number of occurrences which arose out of these undisputed events. Home contends that there were four occurrences, one for each of the Kentucky lots of Nopdex. Aetna and Diamond claim there were only two occurrences, one for each of the two New Jersey lots of Vitamin D3 resin. Under the latter construction, Home would bear a greater and Aetna and Diamond a lesser financial burden.[1]

Home argues that the "common sense" construction of the contract is that the goods or products referred to in the batch clause are commodities, such as Nopdex "200," which are transferred to third parties. Diamond and Aetna, on the other hand, contend that the plain meaning of "occurrence" and the batch clause require finding a product as soon as an identifiable substance has been manufactured. In support of their interpretation of the contract, Diamond and Aetna submitted several affidavits explaining both the intent of the parties in adding the batch clause to the policy and the generally accepted understanding and customary usage of such a clause in the insurance industry. Home then advanced its own affidavit which disputed the conclusions reached by defendants' affiants. The district court excluded the defendants' extrinsic evidence because it

1. The following table indicates the financial responsibilities of each party under the different interpretations:

|  | Aetna | Diamond | Home |
|---|---|---|---|
| Two Occurrences ......... | $300,000 | $200,000 | Remainder up to $3 |
| Four Occurrences ......... | 600,000 | 400,000 | million per occurrence |

found that conclusory statements as to intent were presented and because the affiants did not state facts sufficient to qualify themselves to testify as to insurance industry custom and practice; it then granted Home's motion for summary judgment.

At the time of its decision, the district court did not have the benefit of this Court's thorough review of the principles relevant to the granting of summary judgment contained in *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317 (2 Cir. October 24, 1975). In *Heyman,* the parties were "at loggerheads over the proper interpretation of their obligations under the [insurance] settlement agreement and, more specifically, about the intent behind—and meaning of—the term 'the new building' . . . ." *Id.* at 1320. This Court held that summary judgment was improper since the "parties have a right to present oral testimony or other extrinsic evidence at trial to aid in interpreting a contract whose provisions are not wholly unambiguous." *Id.*

██ The fact that both sides in the instant case sought summary judgment does not make it more readily available. *American Manuf. Mutual Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2 Cir. 1967). Although all the litigants claim that the insurance policy is unambiguous, they sharply disagree over the meaning of the batch clause and the intent behind its addition to the contract; the affidavits also place in issue the understanding and custom of the insurance industry regarding such clauses. Since these issues of material fact are controverted by the parties, further proceedings on the merits are needed. *National Life Insurance Co. v. Solomon and Schuster,* 529 F.2d 59 (2 Cir. December 9, 1975). Accordingly, we reverse the granting of summary judgment and remand to the district court. In so doing, of course, we express no opinion as to the merits of this case.