SCHERING CORPORATION,
Plaintiff-Appellee-Cross-Appellant,

v.

HOME INSURANCE COMPANY,
Defendant-Appellant-Cross-Appellee.

No. 1314, Dockets 83–7056, 83–7102.

United States Court of Appeals,
Second Circuit.

Submitted June 1, 1983.

Decided June 21, 1983.

Skadden, Arps, Slate, Meagher & Flom, New York City (Barry H. Garfinkel, Sheila L. Birnbaum, Irene A. Sullivan, Barbara Wrubel, Jeffrey S. Lichtman, New York City, of counsel), for defendant-appellant-cross-appellee.

Winthrop, Stimson, Putnam & Roberts, New York City (Edwin J. Wesely, Eloise L. Morgan, Virginia G. Shubert, Susan J. Kohlmann, Henry R. Simon, New York City, of counsel), for plaintiff-appellee-cross-appellant.

Brobeck, Phleger & Harrison, San Francisco, Cal. (E. Judge Elderkin, William R. Irwin, Donald W. Brown, Tom M. Freeman, L. Christopher Vejnoska, San Francisco, Cal., of counsel) and Anderson, Russell, Kill & Olick, P.C., New York City (Eugene R. Anderson, Jerold Oshinsky, New York City, of counsel), for amici curiae Fireboard Corp., et al.

Santarelli & Gimer, Washington, D.C. (Richard H. Gimer, Washington, D.C., of counsel); Hall, Henry, Oliver & McReavy, San Francisco, Cal. (Stephen McReavy, Lee H. Cliff, Jeffrey Kaufman, San Francisco, Cal., of counsel); Wilmer, Cutler & Pickering, Washington, D.C. (Dennis M. Flannery, Carol H. Fishman, Washington, D.C., of counsel) and Dinsmore & Shohl, Cincinnati, Ohio (Gerald V. Weigle, Jr., Janet R. Eaton, David H. Beaver, Cincinnati, Ohio, of counsel), for amici curiae Commercial Union Ins. Companies, Firemen's Fund Ins. Co.; Ins. Co. of North America, and Liberty Mut. Ins. Co.

Covington & Burling, Washington, D.C. (Robert N. Sayler, Edward J. Beder, Jr., John G. Buchanan, III, Washington, D.C. of counsel); Clifford & Warnke, Washington, D.C. (Harold D. Murry, Jr., John G. Calender, Washington, D.C., of counsel); Rogovin, Huge & Lenzner, Washington, D.C. (Harry Huge, Saul B. Goodman, Washington, D.C., of counsel); Cravath, Swaine & Moore, New York City (Robert S. Rifkind, Louis M. Solomon, New York City, of counsel); The Upjohn Co., Kalamazoo, Mich., (Kenneth M. Cyrus, Kalamazoo, Mich., of counsel); Slade & Pellman, New York City (John F. Triggs, Anthony P. Coles, New York City, of counsel) and E.R. Squibb & Sons, Inc., Princeton, N.J. (Robert C. Johnston, Princeton, N.J., of counsel), for amici curiae The Upjohn Co., Abbott Laboratories, Emons Industries, Inc. and E.R. Squibb & Sons, Inc.

Day, Berry & Howard, Hartford, Conn. (Thomas J. Groark, Allan B. Taylor and Eve Cutler Rosen, Hartford, Conn., of counsel) for amicus curiae Aetna Cas. & Sur. Co.

Before KAUFMAN, PRATT and GIBSON,* Circuit Judges.

KAUFMAN, Circuit Judge:

When a motion for summary judgment presents complex legal issues with far-reaching implications, a judge must balance two competing goals. Confronted with the prospect of lengthy pre-trial proceedings that postpone the day of judgment, the district court must conserve judicial resources by promptly resolving those matters in which "no genuine issue as to any material fact" is presented. Fed.R.Civ.P. 56(c). At the same time, justice requires careful consideration of the entire posture of the case so the "drastic device" of summary judgment, *Heyman v. Commerce and Industry Co.*, 524 F.2d 1317, 1320 (2d Cir.1975), is not precipitously imposed.

In its understandable zeal to resolve non-perspicuous issues of interpretation, a district court may at times lose sight of the need for restraint. Justice must be both rapid and fair. Matters which our system of conflict resolution reserves for full exposition at trial may not be consigned to cursory disposition. This Court has on numerous occasions set forth the standards which judges must follow in deciding whether to grant summary judgment. *See, e.g., Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444–45 (2d Cir.1980); *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978); *Home Insurance Co. v. Aetna Casualty & Surety Co.*, 528 F.2d 1388, 1390

* Of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

(2d Cir.1976); *Heyman v. Commerce and Industry Co., supra,* 524 F.2d at 1319–20. Because we believe the court below misapplied these guidelines in the present dispute, we reverse its grant of summary judgment in this declaratory judgment action and remand for further proceedings.

To facilitate understanding of the issues raised for our consideration, we set forth the facts in some detail, mindful that ambiguities must be resolved and reasonable inferences drawn in favor of the party against whom summary judgment is sought. *Heyman v. Commerce and Industry Co., supra,* 524 F.2d at 1320.

I

This controversy arose from a dispute between Schering Corporation ("Schering"), a drug manufacturer, and its excess liability insurer, Home Insurance Company ("Home"). At stake is Home's potential liability for untold millions of dollars in payment for claims by plaintiffs who assert injury from Schering's synthetic estrogen product, dienestrol ("DEN"). The story of DEN is a tragic tale of modern medicine as well as a word of caution to insurers to anticipate potential problems created by unscrutinized standard clauses in policies.

In 1958, Schering commenced the manufacture and distribution of DEN either directly or through a subsidiary. Synthetic estrogens such as DEN and its chemical cousin, the well-known diethylstilbesterol ("DES"), have been prescribed to women since the early 1940's for a variety of reasons. In particular, DEN was widely administered to patients with high-risk pregnancies for the purpose of preventing miscarriages.

While thousands of doctors were dispensing synthetic estrogens to millions of expectant mothers, Schering and Home entered into an important series of contracts. From August 30, 1966 to February 7, 1976, Schering paid Home over $1,000,000 in premiums for excess liability coverage. Unable to anticipate the tidal wave of controversy, anguish, and, finally, litigation, that would soon inundate the makers and users of both DES and DEN, Schering and its insurer concluded standard-form comprehensive general liability ("CGL") contracts. The critical provision of this type of policy is the stipulation that the insurer agreed to indemnify the manufacturer for liability when use of its products resulted in personal injury during the policy period. The pertinent language is set forth in the margin.[1]

In 1971, an association between synthetic estrogens and clear-cell vaginal adenocarcinoma (a cancer of glandular tissues in the vagina) in daughters of women who had taken DES was reported in the medical literature. Herbst, Ulfelder & Poskanzer, *Adenocarcinoma of the Vagina,* 284 New England J.Med. 878 (1971). Later that year, the Food and Drug Administration (FDA) proscribed the use of DEN (as well as DES) in the treatment of pregnant women. Although DES and DEN continue to be marketed for purposes other than preventing miscarriages, their deleterious effects on female offspring of women who took the drugs while with child (commonly referred to as "DES daughters") are well documented. Since the initial study and FDA banning order, maternal ingestion has been associated with adenosis (abnormal presence of glandular epithelial cells or tissue in the vagina or cervix), structural abnormalities of the cervix and vagina, surgical interventions such as vaginectomies, and a host of other afflictions (infertility, anxiety, embarrassment, mental anguish, and other psychological sequela).

1. In relevant part, Home's CGL policies state:
   1. Coverage
      The Company hereby agrees ... to indemnify the Insured for all sums which the Insured shall be obligated to pay ... for damages, direct or consequential and expenses ... on account of:

   (i) Personal Injuries, including death at any time resulting therefrom, ... caused by or arising out of each occurrence happening anywhere in the world.
   *See, e.g.,* Home Insurance Company policy number HEC 4429288, Insuring Agreements, at para. 1.

Filial redress for injuries suffered while *in utero* promises to be expensive for both manufacturers and insurers. The instant case arose because the settlement of a single DES daughter action exhausted Schering's primary liability of $1 million for the year 1974. Numerous other actions against Schering and its fellow manufacturers are pending. *See* Brief of Amici Curiae The Upjohn Company, Abbott Laboratories, Emons Industries, Inc. and E.R. Squibb & Sons, Inc. When Schering turned to its secondary liability insurer, Home, for further indemnification, the parties disagreed over whether the terms of the policies required Home to pay for these injuries. Insured and insurer professed divergent views on when DEN injury or damage "occurred" —before 1966, when pregnant mothers consumed the substance, or later, during the policy period, when the unfortunate daughters discerned the extent of the harm innocently inflicted on them by well-meaning mothers and their physicians. Predictably, litigation followed.

## II

Schering initially sought a declaratory judgment pursuant to 28 U.S.C. § 2201 for a statement of its rights under the insurance policies. On May 6, 1980, the trial court approved a stipulation in which the parties agreed to dismissal of Schering's complaint without prejudice. The action proceeded on counterclaims filed on January 16, 1980 by Home. The litigation was to resolve, *inter alia,* the issue whether Home was obligated to defend or indemnify Schering for any loss from prenatal use of DEN "which resulted, was discovered or became manifest" during the policy period. Schering's motion for summary judgment was filed November 10, 1980.

Appellee's original contention was that the proper interpretation of the key words "results in personal injury ... during the policy period" required appellant to indemnify Schering for losses sustained from claims for injuries which became manifest during the policy period. But, the injuries to daughters of DES users become manifest only some years after the onset of menses, when the ill-fated offspring mature and discover the extent of the damage visited upon them.

During the pendency of the action a *deus ex machina* in the form of an opinion of the District of Columbia Circuit persuaded Schering to modify its theory. In *Keene Corp. v. Insurance Co. of North America,* 667 F.2d 1034 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982), the court construed CGL policies similar to the ones issued by Home, albeit in the context of asbestos-related diseases rather than synthetic estrogens. *Keene* concluded the CGL language requires indemnification for liability occurring at the time of "inhalation exposure, exposure in residence [i.e., during the latency period, in the lungs], *and manifestation,*" thereby triggering coverage at "*any* part of the single injurious process that asbestos-related diseases entail." *Id.* at 1047 (emphasis supplied).

Finding this logic unassailable, Schering abandoned its "manifestation" theory and urged the district court to find that "each insurer on the risk from initial exposure to manifestation is liable for full indemnification." Schering Corp.'s Summary Memorandum In Support of Its Motion For Summary Judgment. Home submitted affidavits in support of its counter-argument that the parties intended coverage to commence when the injury to DES daughters occurred (presumably while tort plaintiffs were *en ventre sa mere,* often before 1966).

The district court rejected both appellant's and appellee's theories. The court did grant Schering summary judgment, however, concluding the CGL terms require Home to indemnify its insured for liability arising from injuries which occurred either at the time DEN was ingested (origination of injury) or when injury was discovered by DES daughters (manifestation of injury). 544 F.Supp. 613, 622. Home now appeals the grant of summary judgment and Schering cross-appeals, urging us to accept the rationale of *Keene, supra,* and extend Home's responsibility to indemnify for inju-

ries latent in afflicted children during the policy period.

We shall not attempt to untangle this Gordian knot of interpretation. The day of reckoning on these important issues must await full development of relevant, material, and competent evidence. As we noted, the trial court had before it conflicting allegations in affidavits submitted in support of and in opposition to the motion. Moreover, the trial court stayed appellee's motion for further discovery. 544 F.Supp. at 622. Our opinions on summary judgment make clear it was improper to grant Schering's motion at this preliminary stage of the proceedings. *Home Insurance Co. v. Aetna Casualty and Surety Co., supra,* 528 F.2d at 1390.

### III

■ We have stated that "on a motion for summary judgment the court cannot try issues of fact; it can only determine whether there are issues to be tried." *Heyman v. Commerce and Industry Co., supra,* 524 F.2d at 1320. Moreover, we recently reiterated, "the key is issue-finding, not issue-resolution." *United States v. One Tintoretto Painting Entitled "The Holy Family with Saint Catherine and Honored Donor",* 691 F.2d 603, 606 (2d Cir.1982). The trial court may properly consider the documents set forth in Rule 56(c)—pleadings, depositions, affidavits, answers to interrogatories, and admissions—in ruling on the motion. Despite the court's inability to observe the affiant's or deponent's demeanor, the availability of cross-examination during sworn testimony, in depositions or interrogatories, in effect, is adequate protection of the parties' rights. 6 *Moore's Federal Practice* 56.-15[4], at 56–513 (1976); *see SEC v. Research Automation Corp., supra,* 585 F.2d at 33.

■ The moving party has the burden of demonstrating the absence of any material factual issue genuinely in dispute, *Quinn v. Syracuse Model Neighborhood Corp., supra,* 613 F.2d at 444, but the opposing party may not rest upon mere conclusory allegations or denials. Fed.R.Civ.P.

56(e). To defeat a summary judgment motion, the opposing party must set forth "supporting arguments or facts in opposition to the motion." *SEC v. Research Automation Corp., supra,* 585 F.2d at 31. If the opponent fails to substantiate the existence of a genuine dispute, a proper concern for judicial efficiency and the mandate of Rule 56(c) require summary disposition of the issue. *Id.* We conclude appellant met its Rule 56(e) burden. The court below traversed the line between identifying genuinely disputed issues—the proper function of a summary judgment motion—and prematurely resolving those issues.

■ The summary judgment principles elucidated in *Heyman, supra* and our other cases require that where contract language is susceptible of at least two fairly reasonable meanings, the parties have a right to present extrinsic evidence of their intent at the time of contracting. Summary judgment is perforce improper if conflicting evidence is adduced. *Id.* at 1320; *Home Insurance Co. v. Aetna Casualty & Surety Co., supra,* 528 F.2d at 1390.

■ Home submitted affidavits of the drafters of the industry-wide standardized CGL clause asserting an explication completely at variance from Schering's construction of the contract. George Katz and Richard A. Schmalz both claimed that, as draftsmen, they contemplated coverage for injuries which occur, rather than became manifest, during the policy period. *See* Affidavit of George Katz and Affidavit of Richard A. Schmalz. Home's theory was clearly neither frivolous nor meritless. Accordingly, the court below was obligated to identify the disputed issue of intended meaning rather than to resolve it. *Quinn v. Syracuse Model Neighborhood Corp., supra,* 613 F.2d at 438. The trial court failed to apply our rule that summary judgment cannot be granted where, as here, the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact. *New York State Energy Research and Dev. Auth. v. Nuclear*

*Fuel Services, Inc.,* 666 F.2d 787, 790 (2d Cir.1981).[2]

■ Moreover, we have frequently emphasized the critical importance of discovery in the summary judgment context. Home sought evidence demonstrating Schering accepted, adopted, or otherwise ratified the elucidation of the contracts set forth in the drafters' affidavits. From an evidently well-intentioned desire to resolve this troublesome litigation expeditiously, the trial court stayed this discovery, basing its action on the fact Schering had already produced 74,000 pages of documents and on its understanding that Home, as a party to the contract, had ample knowledge of intent. 544 F.Supp. at 622. As we have stressed, however, summary judgment should not be granted while the party opposing judgment timely seeks discovery of potentially favorable information. *Quinn v. Syracuse Model Neighborhood Corp., supra,* 613 F.2d at 445; *see also Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 899 (2d Cir.1976).

Home's request for additional documents was neither quixotic nor superfluous. Schering's responses to Home's previous demands were deficient in many respects. The manufacturer furnished cover letters with tantalizing references to attachments probative of the insured's understanding, but withheld the attachments. That Home was a party to original negotiations with appellee is not dispositive. Evidence of contractual intent is typically within the exclusive control of the party whose state of mind is at issue, and the insurer was in no position to demonstrate what its insured's understanding might have been, based only upon its own files. As we have previously cautioned, "summary judgment is likely to be inappropriate when the issues concern intent." *SEC v. Research Automation Corp., supra,* 585 F.2d at 33.

■ We have held where a contract is not wholly unambiguous, summary judgment must be denied even where both parties move for pre-trial resolution. *Home Insurance Co. v. Aetna Casualty & Surety Co., supra,* 528 F.2d at 1390. It follows that where one party opposes summary judgment by propounding a reasonable interpretation of a disputed matter, it may be sufficient to defeat the motion. Moreover, where a party seeks discovery of evidence probative of the movant's intent related to the critical question, there remains the possibility that here too, a genuine issue of material fact might come to light, requiring denial of the summary judgment motion.

Accordingly, we reverse the judgment and remand for further proceedings. Our

2. The court below attempted to dispose of the matter of conflicting interpretation by applying the accepted maxim requiring ambiguities in insurance contracts to be construed against the insurer. 544 F.Supp. at 620. The trial court erroneously invoked this doctrine because *contra preferentem* is used only as a matter of last resort, after all aids to construction have been employed but have failed to resolve the ambiguities in the written instrument. *See, e.g., Union Ins. Soc'y of Canton, Ltd. v. William Gluckin & Co.,* 353 F.2d 946, 951 (2d Cir.1965). This is clearly the law in New York. *Hartford Accident & Indem. Co. v. Wesolowski,* 33 N.Y.2d 169, 172, 350 N.Y.S.2d 895, 305 N.E.2d 907 (1973). To conclude otherwise would require every ambiguously drafted policy to be automatically construed against the insurer, a proposition not even Schering supports.

Moreover, there is an unresolved question whether the rule of *contra preferentem* is even applicable in a situation involving a large, sophisticated, counselled entity such as Schering, since a number of courts have recognized that in cases involving bargained-for contracts, negotiated by sophisticated parties, the underlying adhesion contract rationale for the doctrine is inapposite. *See, e.g., Eagle Leasing Corp. v. Hartford Fire Ins. Co.,* 540 F.2d 1257, 1261 (5th Cir.1976), *cert. denied,* 431 U.S. 967, 97 S.Ct. 2926, 53 L.Ed.2d 1063 (1977). This court has not decided the issue and, contrary to appellee's position, *Pan American World Airways, Inc. v. Aetna Casualty & Surety Co.,* 505 F.2d 989 (2d Cir.1974) does not require invocation of *contra preferentem.* In that case we found the insured had no bargaining power notwithstanding its size and experience, because no company offered "all risk" insurance on terms other than those Pan Am was forced to accept. *Id.* at 1003. The product liability market appears to be more competitive, and insured have at least some measure of bargaining power. In any event, the trial court should not have resorted to *contra preferentem* for the reasons we have set forth.

holding, of course, reflects no opinion on the merits of the case.