**Grace C. ADIPIETRO, Plaintiff,**

v.

**CHUBB LIFE AMERICAN and The Colonial Life Insurance Company of America, Defendants.**

**No. 86 CV 3521.**

United States District Court, E.D. New York.

May 7, 1990.

**30**

Baron & Vesel, P.C., Forest Hills, N.Y. (Peter D. Baron, of counsel), for plaintiff.

Carb, Luria, Glassner, Cook & Kufeld, New York City (James E. Schwartz, of counsel), for defendants.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Plaintiff, Grace C. Adipietro, is a New York citizen. Defendant Colonial Life Insurance Company of America ("Colonial") is an insurance company incorporated under the laws of New Jersey with its princi-

pal place of business in New Jersey.[1] This Court's jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1331.

## FACTS

On September 1, 1982 Loriann Adipietro, plaintiff's daughter, suffered severe injuries which left her comatose for three and one-half months. Loriann was hospitalized from September 1, 1982 until November 1983. Thererafter, Loriann received therapy at Children's Specialized Hospital in Mountainside, New Jesey on an out-patient basis until May 1984.

During this therapy, Loriann's physician recommended that she continue her treatment at a facility closer to her home. To that end, Loriann sought and gained admission to the New York University Medical Center Head Trauma Rehabilitation Program (the "Program") beginning in fall 1984.

At the time Loriann entered the Program, her mother, plaintiff Grace C. Adipietro, was employed full-time by TDK Electronics Corp. According to plaintiff, all full-time employees of TDK were entitled to family medical benefits under Colonial Group Policy Number 305377–000 (the "Policy").

Apparently, plaintiff sought assurance from Colonial that she would be reimbursed for Program expenses incurred by Loriann. On approximately June 21, 1984, Colonial informed plaintiff that Program expenses would not be covered under the Policy.

In December 1984 plaintiff brought an action in this Court captioned *Grace C. Adipietro v. The Chubb Life American and the Colonial Life Insurance Company of America*, 84 CV 4873 (the "1984 Action"). Plaintiff brought the 1984 Action to recover compensatory and punitive damages for Colonial's allegedly "arbitrary" denial of benefits, and for a judgment declaring that the Policy obligated

1. Although Chubb Life American is named as a defendant, Colonial states that "Chubb Life American" is not a legal entity. According to Colonial, "Chubb Life American" is merely a trade name used by Colonial and its affiliates. Accordingly, this opinion refers to the defendants as Colonial.

Colonial to "pay for all cognitive therapy prescribed up to the present time ..." (Affidavit In Support of Motion ("Aff. In Supp."), Exh. A at 7).

On October 1, 1985 the parties entered into a stipulation settling the 1984 Action (the "Stipulation"). The present controversy centers on the Stipulation, which provides in part that:

1. Defendant [Colonial] agrees to reimburse plaintiff for the cost of plaintiff's daughter Loriann's participation in the [Program] *as described in ... Exhibit 1.*

2. Reimbursement shall be for the fees actually incurred and limited to the amount of $24,910.00 *as set forth in Exhibit 1.*

3. Plaintiff agrees to accept the foregoing reimbursement in full satisfaction of all plaintiff's claims *set forth in the complaint* and the [1984 Action] is discontinued with prejudice ..., and

4. [E]vidence of this ... settlement *shall not be admissible in any future litigation pertaining to any future treatment programs* for plaintiff's daughter ... (emphasis added)

Exhibit 1 of the Stipulation provides a detailed description of the Program's intensive remedial phase.

Subsequently, Loriann participated in the Program's intensive remedial phase. Colonial fulfilled its obligation under the Stipulation by reimbursing plaintiff for $24,910.00 in fees incurred in connection with this treatment.

After the intensive remedial phase completed by Loriann, most patients progress to the second and final Program phase—the "occupational trial." (Aff. In Supp. at 24–25). When Loriann completed the intensive remedial phase, however, it was concluded that she was not prepared to enter an occupational trial.

From March 6, 1986 until July 10, 1986, Loriann participated in a "second cycle" of the intensive remedial phase. This "second cycle" of therapy was conducted within the same "framework" or "format" as the first cycle, and involved repetition of cognitive exercises performed therein. (Aff. In Supp., Exh. J at 33–34). The second cycle differed from the first because "the exercises were special clinical problems tailor-designed for [Loriann]." (*Id.* at 33). These exercises were intended to address areas in which Loriann made insufficient progress during the first cycle.

On October 17, 1986 plaintiff filed the complaint in the instant action, alleging that Colonial improperly refused to pay plaintiff medical benefits under the Policy. The payment at issue relates to fees incurred by Loriann during the "second cycle" of the Program.

Defendant Colonial moves for summary judgment pursuant to Fed.R.Civ.P. 56(b) on the ground that plaintiff's benefits claim is precluded by the Stipulation. Plaintiff contends that defendant is not entitled to summary judgment because, among other things, it is a question of fact whether the "second cycle" was a future treatment program outside the scope of the Stipulation.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "after adequate time for discovery ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The movant bears the initial responsibility of setting forth the basis for its motion and identifying any portions of the record which demonstrate the absence of a genuine issue of fact. *Id.* at 323, 106 S.Ct. at 2552. The non-movant, however, " 'may not rest upon mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). If the nonmovant "fails to substantiate the existence of a genuine dispute, a proper

concern for judicial efficiency and the mandate of Rule 56(c) require summary disposition of the issue." *Shering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir.1983).

## II. THE STIPULATION

Effectively, the Stipulation caps at $24,910 Colonial's liability for the treatment described in Stipulation Exhibit 1. Defendant has already reimbursed plaintiff $24,910 for this treatment. Defendant contends that the "second cycle" of treatment is merely a repeat of the treatment described in Exhibit 1 and, therefore, that plaintiff is not entitled to reimbursement for the "second cycle." Plaintiff maintains that whether the "second cycle" is a mere repeat or a different "future treatment program" is a question of fact which precludes summary judgment.

Whether the "second cycle" of treatment is covered by the Policy is an issue not presently before this Court. Under the Policy, plaintiff is entitled to benefits only if medically necessary treatment is rendered for a specific illness. (Aff. In Supp., Exh. C at 4). The only issue presently before this Court, however, is whether the Stipulation extinguishes Colonial's obligation to reimburse plaintiff for the "second cycle" of treatment, assuming that such an obligation exists under the Policy.

### 1. Ambiguity

■ Before measuring the preclusive effect of the Stipulation, I must determine whether it is ambiguous. *Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 527 (2d Cir.1990). I conclude that it is.

Whether contract language is ambiguous is a question of law for this Court. *Burger King*, 893 F.2d at 527; *Curry Road Ltd. v. Kmart Corp.*, 893 F.2d 509, 511 (2d Cir. 1990); *Pantone Inc. v. Esselte Letraset, Ltd.*, 878 F.2d 601, 605 (2d Cir.1989). Language is ambiguous if it is:

> capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.

*Pantone*, 878 F.2d at 606 (quoting *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F.Supp. 987, 994 (S.D.N.Y.1968)); *Burger King*, 893 F.2d at 527.

The critical language at issue is the description of the Program in Exhibit 1, and the phrase "future treatment program." After considering these phrases, I conclude that each is reasonably susceptible to more than one interpretation. *See Burger King*, 893 F.2d at 528.

Exhibit 1 describes the intensive remedial phase of the Program and details the different treatments administered therein. It is unclear whether a program involving variations of such treatments is a "future treatment program" not covered by the Stipulation. It is also unclear whether Program treatments other than the intensive remedial phase (*i.e.*, an occupational trial) are "future treatment programs". Similarly, and for the same reasons, it is unclear exactly what treatments are within the scope of the description in Stipulation Exhibit 1.

Contracts generally must be interpreted so as to effectuate the intentions of the parties. *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989). Because the Stipulation is reasonably susceptible to more than one interpretation it is appropriate to consider extrinsic evidence of the parties' intent. *Burger King*, 893 F.2d at 527, 528.

### 2. Extrinsic Evidence of Intent

■ In support of its contention that the "second cycle" of treatment received by Loriann is the same as the treatment it paid for pursuant to the Stipulation, Colonial offers the deposition testimony of Dr. Yehuda Ben–Yishay, director of the Program. Dr. Ben–Yishay testified that at the conclusion of the "first cycle" of the intensive remedial phase, Loriann was not prepared to advance to an occupational trial. (Aff. In Supp., Exh. J at 32–33). Dr. Ben–Yishay also testified that it was recommended that Loriann "come back for anoth-

er round" of "post-graduate" work in the intensive remedial phase.

Further, Colonial points out that the fee for Loriann's "second cycle" was virtually identical to the fee charged for the intensive remedial phase. According to Colonial, all of this evidence demonstrates that plaintiff's instant claim is the same as the claim plaintiff compromised by entering the Stipulation.

On the other hand, plaintiff asserts that the "second cycle" was different from the treatment described in the Stipulation. In support of her contention, plaintiff relies on Dr. Ben–Yishay's testimony that the second cycle involved "no repetition" of Loriann's previous treatment. To clarify this testimony, Dr. Ben–Yishay explained that the second cycle was administered in the "same framework" as the prior treatment, but that the contents were different because Loriann performed exercises "tailor-designed" for her. (Aff. In Supp., Exh. J at 59).

In *Burger King*, 893 F.2d at 528, the Second Circuit considered an ambiguous settlement agreement and stated that "[s]ummary judgment normally is inappropriate when a contractual term is ambiguous because 'a triable issue of fact exists as to its interpretation.'" *Id.* (quoting *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1559 (2d Cir.1989)). When the parties present conflicting evidence of intent, "the district court may only identify the issues at the summary judgment stage, not resolve them." *Burger King*, 893 F.2d at 528; *see Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9–10 (2d Cir.1983). Accordingly, Colonial is entitled to summary judgment only if the evidence of intent it presents does not conflict with plaintiff's evidence.

The evidence of intent is, however, conflicting. Colonial offers evidence tending to prove the "second cycle" was a mere repeat of the intensive remedial phase. Plaintiff's evidence tends to prove the second cycle was a "future treatment program" not contemplated by the Stipulation. The resolution of this dispute is a factual question properly reserved for trial. Ac-

cordingly, Colonial's motion for summary judgment is denied.

## III. AMENDMENT OF PLAINTIFF'S COMPLAINT

Plaintiff moves pursuant to Fed.R.Civ.P. 15(a) for leave to amend her complaint by increasing the *ad damnum* clause from $14,000 to $25,000. Colonial does not substantively oppose this motion, but merely states that "the cross-motion to amend the complaint [should] be denied as academic." (Reply Aff. at 13).

Fed.R.Civ.P. 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." In light of this provision and the lack of opposition by defendant, plaintiff's motion is granted.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is denied and plaintiff's motion for leave to amend her complaint is granted.

SO ORDERED.