DUNKIN' DONUTS INCORPORATED,
Plaintiff,

v.

PRIYA ENTERPRISES,
INC., Defendant.

No. 98–CV–3880 ADS.

United States District Court,
E.D. New York.

March 11, 2000.

O'Rourke & Degan, PLLC, New York City, for plaintiff, Ronald D. Degan, of counsel.

Schmeltzer, Aptaker & Sheppard, P.C., for plaintiff, Washington, D.C., Robert Zisk, David E. Worthen, of counsel.

Albin & Richman, P.C., for defendant, Garden City, New York, Lee M. Albin, of counsel.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case involves a contract dispute between the Plaintiff Dunkin' Donuts, ("Dunkin Donuts"), and one of its franchisees, Defendant Priya Enterprises, ("Priya"), regarding the terms of a franchise agreement. Presently before the Court are Dunkin' Donuts' motion for summary judgment on its entitlement to attorneys' fees and costs and Priya's cross-motion for summary judgment dismissing the action.

### BACKGROUND

Priya is a franchisee of Dunkin' Donuts, operating stores in Coram, New York ("the Coram shop") and Lake Ronkonkoma, New York ("the Lake Ronkonkoma shop") pursuant to two separate franchise agreements dated June 13, 1996. Dunkin' Donuts provides manuals and guidelines to its franchisees which detail the requirements for operation of a Dunkin' Donuts shop. These manuals contain various requirements for cleaning and maintaining production and sales area equipment; production and handling of food products; and receiving and storing raw materials. Under the franchise agreements, franchisees agrees to operate their shops in accordance with the specifications and standards provided by Dunkin' Donuts and to maintain the Shop "in the highest degree of cleanliness, orderliness, sanitation and repair, as reasonably required by Dunkin' Donuts."

Section 9 of the franchise agreement governs the procedures to be followed if the franchisee is alleged to have violated the franchise agreement. According to Section 9.1.2, any franchisee's violation of a Dunkin' Donuts standard for health, sanitation, or safety must be cured within 24 hours of the time Dunkin Donuts gives the franchisee written notice of the violation. Pursuant to Section 9.3

[i]f FRANCHISEE fails to cure a default, following notice, within the applicable time period set forth in paragraph 9.1 ... FRANCHISEE shall pay to DUNKIN' DONUTS all damages, costs, and expenses, including, without limitation, interest at eighteen percent (18%) per annum, or the highest permissible rate, and reasonable attorneys' fees incurred by DUNKIN' DONUTS as a result of any such default or termination; and said interest and all damages, costs and expenses, including reasonable attorneys' fees, may be included in and form part of the judgment awarded to DUNKIN' DONUTS in any proceeding brought by DUNKIN' DONUTS against FRANCHISEE.

Neither party contests the validity of the Franchise Agreement. Rather, the parties dispute the applicability of the default provision to the facts of this case. Dunkin' Donuts commenced this action on June 1, 1999, alleging that Priya had failed to cure sanitation violations found after inspections of both of its stores. These inspections were conducted in the Spring of 1998 by Dean Marino and Josh Robinson, Dunkin Donuts business consultants.

### The Lake Ronkonkoma Shop

The Lake Ronkonkoma Shop was first inspected on April 10, 1998 by Josh Robinson. On April 13, 1998, Robinson sent the Priya a Notice to Cure several sanitation and food preparation violations that were

discovered during that inspection. On April 24, 1998, Dean Marino inspected the Lake Ronkonkoma Shop and determined that many of the sanitation and food preparation violations that had been cited by Robinson on April 13 remained unremedied.

On June 1, 1998, Dunkin Donuts commenced this action alleging breach of the franchise agreement, and seeking injunctive relief requiring Priya to cure the alleged health, sanitation, and safety violations. In addition, Dunkin' Donuts sought an award of attorneys' fees and costs for the action pursuant to Section 9.3 of the franchise agreement.

Marino re-inspected the Lake Ronkonkoma Shop on August 6, 1998, at which time it was found to be "in substantial compliance with Dunkin' standards."

### The Coram Shop

Marino inspected the Coram shop on May 3, 1998, and on May 11, 1998 issued a Notice to Cure to Priya citing numerous sanitation and physical plant violations. Marino re-inspected the Coram Shop on May 27, 1998 and found the violations remained uncured.

On June 15, 1998, Dunkin Donuts amended its complaint in this case to allege that Priya breached the franchise agreement for the Coram shop as well. The amended complaint again sought an injunction directing Priya to cure the violations and attorney's fees and costs for bringing the action. Priya answered the amended complaint and interposed a counterclaim, alleging that Dunkin Donuts' lawsuit instituted maliciously to injure Priya's reputation. Priya requested $5,000,000 in damages on the counterclaim.

On July 17, 1998, Marino inspected the Coram Shop once more at which time he found it to be "in substantial compliance with Dunkin' standards."

As a result of Priya curing the standards violations at both stores, it appears that Dunkin Donuts has abandoned its request for injunctive relief. However, Dunkin Donuts now moves for summary judgment awarding it attorneys' fees and costs under Section 9.3 of the franchise agreements. Priya opposes and cross-moves for summary judgment on the grounds that any violations of Dunkin Donuts standards were *de minimis* and not grounds for an action under Section 9 of the Franchise Agreement because they did not rise to the level of posing a danger to health or safety. Priya also asserts that all violations were cured between April 24, 1998 and the filing of the lawsuit on June 1, 1998.

Priya contends that shortly after Dunkin Donuts filed the complaint, its attorney contacted Priya's attorney. According to Priya, Dunkin Donuts' attorney advised its counsel that only two violations were at issue in Ronkonkoma: two leaky pipes under a sink and the use by customers of cream in its original container rather than in a cream dispenser. Priya's attorney contends that he advised counsel for Dunkin Donuts that these violations did not merit a lawsuit, and was told that Dunkin Donuts would discontinue the lawsuit if Priya paid $2,000 in attorney's fees. Dunkin Donuts admits the general contents of that conversation took place, but contends that its attorney merely recited the few violations he could recall from memory and directed Priya's attorney to the Notices to Cure for full details on all of the cited violations.

### DISCUSSION

Summary judgment is appropriate where the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden of showing that no genuine factual issue exists rests on the moving party. *See Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir. 1994). All ambiguities must be resolved

and all inferences must be drawn in favor of the party against whom summary judgment is sought. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998). The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful. *D'Amico*, 132 F.3d at 149; *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir.1997).

■ Before granting summary judgment in an action on a contract, the court must find that the contract terms are "wholly unambiguous." *See Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 (2d Cir.1983). Unless the movant can demonstrate that the contractual language is not "susceptible of at least two fairly reasonable meanings" summary judgment will not be granted. *Id.* at 9. However, summary judgment is appropriate where the language of the contract is clear on its face, even though the movant proffers a different interpretation of the contract language. *See Harris Trust & Savings Bank v. John Hancock Mut. Life Ins. Co.*, 970 F.2d 1138, 1147–48 (2d Cir.1992), *cert. denied*, 507 U.S. 986, 113 S.Ct. 1585, 123 L.Ed.2d 151 (1993).

## A. As to Dunkin' Donuts' Motion for Summary Judgment

The undisputed facts establish that Dunkin Donuts inspected the Lake Ronkonkoma store on April 10, 1998, discovered numerous sanitation and food preparation violations, and issued a Notice to Cure to Priya on April 13, 1998. Further, it is undisputed that Dunkin Donuts re-inspected the Lake Ronkonkoma shop on April 24, 1998, and the violations noted on April 10 remained uncured. At this point, under the unambiguous language of Section 9.1.2 of the franchise agreement, which requires a franchisee to cure violations within 24 hours, Priya was undeniably in violation of the franchise agreement. The same is true with the Coram shop: when Marino inspected the shop on May 11, 1998, and discovered that the violations he had cited in his May 3, 1998 Notice to Cure had not been remedied, Priya was breach of Section 9 the agreement. Upon a breach of the agreement, Section 9.3 authorizes Dunkin Donuts to commence a lawsuit against Priya to enforce the terms of the franchise agreement, and to hold Priya liable for the attorney's fees involved in litigating the case. Dunkin Donuts has therefore established that, under the clear language of the franchise agreement, it is entitled to a judgment for the attorney's fees it has expended in pursuing this case.

Priya raises several defenses. First, it argues that Dunkin Donuts failed to establish that a Notice to Cure was ever sent to the Lake Ronkonkoma store. However, a copy of the April 13, 1998 Notice, addressed to Priya, was attached as Exhibit 3B to Dunkin Donuts' original moving papers. In addition, Dunkin Donuts submitted the affidavit of Robinson, who affirmatively states that he sent a copy of that Notice to Priya. Priya does not assert that it never **received** the Notice to Cure in the Lake Ronkonkoma shop; rather, the affidavit of Jiterendra Patel on behalf of Priya contends only that *"there is no **allegation** that any notice to cure was ever sent to the Lake Ronkonkoma store."* (Underlining in original, bolding added). Patel's affidavit cites no source of personal knowledge to rebut Robinson's contention that he actually sent the Notice to Lake Ronkonkoma, and thus, any factual dispute on this point by Priya is based on mere conjecture and insufficient to defeat a motion for summary judgment. *D'Amico*, 132 F.3d at 149.

■ Next, Priya contends that because the violations cited were *de minimis* and did not threaten the safety and health of the patrons, no lawsuit to enforce the franchise agreement was warranted. In Section 5.1.6 of the franchise agreement, Priya agreed "to maintain, at all times ...

the highest degree of cleanliness, orderliness, sanitation and repair, as reasonably required by Dunkin Donuts." Both Notices to Cure cite more than 10 areas of violation, at least five of which are in the area of improper sanitation practices. Among the cited violations in both shops are "food preparation equipment not dismantled, cleaned and sanitized regularly," "food preparation areas not regularly cleaned with approved sanitizer," and "no employee sanitation training program in place." These violations, which Priya does not actually dispute existed at the time of the inspections, unquestionably amount to serious breaches of Section 5.1.6 of the franchise agreement. The Court is not persuaded that unsatisfactory sanitary practices—such as failing to clean food preparation equipment—in a business selling food to the public can ever be considered *de minimis*. Moreover, the evidence suggests that Priya ignored the Notices to Cure that were served on it, and that these unsanitary practices went uncorrected for periods of at least a week to ten days in two separate stores. Under these circumstances, the Court finds that, as a matter of law, Dunkin Donuts' actions in commencing suit to enforce the franchise agreement, were reasonable.

■ Finally, Priya contends that no action was warranted because it corrected the cited defects sometime between the second inspection in each store and Dunkin Donuts' commencement of the action on June 1, 1998. Even accepting this fact as true, Priya fails to demonstrate that this fact is material. The franchise agreement requires that defects be cured with **24 hours of notice,** and it is undisputed that Priya failed to correct the cited violations within this time frame as Dunkin Donuts' subsequent inspections confirmed. The fact that Priya eventually corrected the defects does not raise a genuine issue of fact, as Priya was in default on the franchise agreement, and thus subject to suit under Section 9.3, as soon as the second inspections confirmed that the violations were not abated within the cure period. Priya does not allege that, prior to commencing the action, Dunkin Donuts inspected the shops a *third* time and found no violations. To accept Priya's argument as a legitimate defense, this Court would have to read into the complaint an obligation upon Dunkin Donuts to inspect the shop *immediately* before filing a suit to enjoin violations of the franchise agreement to determine whether violations that have already gone uncured after the contractual notice period continue to exist. The Court's function in construing a contract is to give effect to the clear agreement made by the parties, not to fashion a new set of obligations. *Slatt v. Slatt,* 64 N.Y.2d 966, 967, 488 N.Y.S.2d 645, 646, 477 N.E.2d 1099 (1985); *see also Wallace v. 600 Partners Co.,* 86 N.Y.2d 543, 548, 634 N.Y.S.2d 669, 671, 658 N.E.2d 715 (1995) (unambiguous contract must be enforced according to the terms used); *In re Ambassador Group, Inc. Litigation,* 738 F.Supp. 57, 62 (E.D.N.Y.1990) (same). Once aware of Priya's violation of the franchise agreement, nothing required Dunkin Donuts to re-reinspect the shops before filing suit, and the Court will not read such a requirement into the agreement.

Thus, this Court holds that Priya has failed to demonstrate any genuine issue of material fact exists, and grants summary judgment to Dunkin Donuts. Dunkin Donuts is entitled to a reasonable attorney's fee as provided for in Section 9.3 of the franchise agreement.

### B. As to Defendant Priya's Motion for Summary Judgment

Priya has cross-moved for summary judgment to dismiss the complaint on the grounds that the alleged violations of the Franchise Agreement were *de minimis.* As discussed above, this Court finds that the cited—and undisputed—violations were material, and thus, the Plaintiff's cross-motion is denied.

Moreover, in considering Priya's cross-motion for summary judgment, the Court

**324**

is entitled to search the record and granted summary judgment to the non-movant if warranted. *See generally* Fed.R.Civ.P. 56(c); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 167–68 (2d Cir.1991). In its answer, Priya asserted a counterclaim that Dunkin Donuts was seeking to injure Priya's reputation and good will and that the amended complaint had been filed and served against Priya without due process of law and for malicious purposes.

In order to make out a claim for abuse of process, three essential elements must be shown: (1) regularly issued process (civil or criminal); (2) an intent to do harm without excuse or justification; and (3) use of the process in a perverted manner to obtain a collateral objective. *See Curiano v. Suozzi*, 63 N.Y.2d 113, 116–17, 480 N.Y.S.2d 466, 468, 469 N.E.2d 1324 (1984). The requirements for a claim for malicious prosecution include proof that: (1) the action was commenced with malice; (2) the prior proceeding lacked any probable cause; and (3) the plaintiff suffered special injury. *See Engel v. CBS, Inc.*, 182 F.3d 124, 128–30 (2d Cir.1999).

The second element of both causes of action require the plaintiff to demonstrate that the defendant's resort to the legal system was unjustified. Because this Court grants summary judgment to Dunkin Donuts on its claim for attorney's fees, finding that it was justified in bringing this action in the first place, the Court finds that Priya cannot, as a matter of law, establish the necessary elements of a claim for abuse of process or malicious prosecution. Therefore, upon searching the record on Priya's cross-motion to dismiss, the Court determines that summary judgment on Priya's counterclaim should be granted to Dunkin Donuts.

### CONCLUSION

For the foregoing reasons, Dunkin Donuts' motion for summary judgment on its claim for attorney's fees is GRANTED.

Priya's cross-motion for summary judgment is DENIED, and summary judgment dismissing Priya's counterclaim is GRANTED. Dunkin Donuts is directed to serve an application for attorney's fees and costs, supported by appropriate documentation, on counsel for Priya and this Court within 30 days of the date of this order. Priya's objections to the requested fees, if any, shall be served on counsel for Dunkin Donuts and this Court within 20 days of Dunkin Donuts' service of its application. Dunkin Donuts may serve a reply within 10 days of the service of Priya's opposition. Oral argument on the application will be scheduled by the Court if deemed necessary.

**SO ORDERED.**