10-3469-cv
Aircraft Services Resales LLC v. Oceanic Capital Company Ltd.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 16th day of August, two thousand twelve.

Present:
> DENNIS JACOBS,
> > *Chief Judge,*
> PIERRE N. LEVAL,
> DEBRA A. LIVINGSTON,
> > *Circuit Judges,*

---

AIRCRAFT SERVICES RESALES LLC,

*Plaintiff-Appellant,*

v.                                                  No. 10-3469-cv

OCEANIC CAPITAL COMPANY LTD.,

*Defendant-Appellee.*

---

For Plaintiff-Appellant:      J. Douglas Baldridge (Lauren D. Eade, *on the brief*), Venable LLP, Washington, D.C.

For Defendant-Appellee:      Robert C. Sentner (Nicole Mastropieri, *on the brief*), Nixon Peabody LLP, New York, New York.

---

Appeal from the United States District Court for the Southern District of New York (Castel, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court entered August 19, 2010, be and hereby is **VACATED**, and the matter **REMANDED**.

Plaintiff-Appellant Aircraft Services Resales LLC ("Seller") appeals from a judgment of the United States District Court for the Southern District of New York. Following a bench trial, the court found for Seller on its claims that Defendant-Appellee Oceanic Capital Company Ltd. ("Purchaser") breached two contracts each providing for Purchaser to purchase a used helicopter from Seller, but limited Seller's recovery to $100,000 per contract on the ground that the contracts, in the court's view, unambiguously liquidated Seller's damages at that amount. Seller contends the clauses in question did not so limit its damages and that it should be entitled to the full measure of damages for breach of contract. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

The two contracts, which governed the sale of two used helicopters, were, for the purposes of this appeal, materially identical. The district court identified Section 2.2 of the contracts as an unambiguous liquidated damages clause. Section 2.2 reads as follows:

2.2 Deposit
As security for [Defendant-Purchaser's] obligations hereunder, [Plaintiff-Seller] hereby acknowledges and confirms that [Purchaser] has deposited with [an escrow agent] the amount of US $100,000.00 (the "Deposit"). The Deposit is non-refundable except as provided herein.

[Purchaser] acknowledges that [Seller], by entering into this Agreement, is removing the Aircraft from the market in reliance upon [Purchaser's] agreement to purchase the Aircraft and that failure by [Purchaser] to purchase the Aircraft, where such failure would constitute a breach of this Agreement may result in the loss by [Seller] of the opportunity to otherwise market the Aircraft. [Purchaser] therefore agrees that the amount of the Deposit shall constitute liquidated

damages arising from the failure by [Purchaser] to purchase the Aircraft, where such failure would constitute a breach of this Agreement and, to the fullest extent permitted by law, [Purchaser] (and all persons claiming through [Purchaser]) waives its right to claim that any part of the Deposit should be returned by [Seller], regardless of the price at which the Aircraft may be sold by [Seller] after termination of this Agreement in circumstances where [Purchaser] has breached this agreement.

*Aircraft Services Resales LLC v. Oceanic Capital Company Ltd.*, No. 10-3469, Joint Appendix ("J.A.") at 13-14, 34-35 (Mar. 8, 2011). The court concluded that the "only reasonable interpretation" of Section 2.2 is that damages for Purchaser's breach of contract are liquidated at, and thus limited to, $100,000 per contract. *Aircraft Services Resales LLC v. Oceanic Capital Company Ltd.*, No. 09-cv-8129, slip op. at 14 (S.D.N.Y. Aug. 16, 2010). Implicit in the court's ruling is the finding that both parties agreed to liquidate damages at that amount.

Seller contended that between the time of the purchase contracts and the time of Purchaser's breach, the market for Seller's helicopters had substantially weakened and that it should be entitled to the customary measure of damages for breach of a contract of sale, being the difference between the contract price and the market price at the time of breach, which would amount to about $3.8 million for each helicopter. Seller asserted that it did not agree to limit its damages to $100,000 in the event of Purchaser's breach.

Because the district court determined the section is unambiguous, it declined to allow extrinsic evidence of the parties' intent at the time of contracting. Among other extrinsic evidence, Seller sought to introduce an internal company email written by Purchaser's chief operating officer which noted that, if Purchaser failed to purchase the two helicopters, Seller "could ask for liquidated damages which could in effect be the gap between what we committed to pay versus what can be obtained for these helicopters in the market today plus financing and storage costs." J.A. 746. Seller argued that this email was evidence that Purchaser did not

understand Section 2.2 to limit Seller's entitlement to $100,000 per contract. The district court, however, considered the evidence inadmissible because it believed the contract language unambiguously so limited the damages.

We review *de novo* the question whether the provisions of a contract are ambiguous. *See Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (applying New York law).[1] The general rule is that "ambiguity exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and [who] is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 197 (2d Cir. 2005) (internal quotation marks and ellipsis omitted).

We cannot agree with the district court that Section 2.2 contains an unambiguous liquidated damages clause which bars Seller from recovering its actual damages. The mere inclusion of the term "liquidated damages" is not dispositive. Depending on what is commanded by the contract, numerous variables may be relevant in determining how and to whom a liquidated damages clause should be applied. Contracts are instruments of infinite refinement, capable of providing for virtually anything the parties agree to, and the fact that one party to a contract has agreed that damages in a certain circumstance should be liquidated does not necessarily mean that all parties have agreed to such a limitation. Contracts sometimes provide for a different measure of damages depending on which party is in breach. *See, e.g., Barrington Mgmt. Co., Inc. v. Paul E. Draper Family Ltd. Partnership*, 695 N.E.2d 135, 139 (Ind. App. Ct.

---

[1] The contracts are governed by New York law. *See* J.A. 18, 39.

1998) (contract providing: "If Buyer breaches this Agreement and is in default, Seller may treat this Agreement as being terminated and receive the Earnest Money as liquidated damages. If Seller breaches this Agreement and is in default, then the Earnest Money shall be returned to Buyer. In addition, if Seller is in default, the Buyer may seek specific performance or any other remedy provided by law or equity against the Seller."). We must therefore scrutinize the language of Section 2.2 to determine which party it applies to, and in what circumstances.

Section 2.2 is focused on the obligations and concessions of Purchaser. It recites Defendant-Purchaser's recognition that Plaintiff-Seller's removal of the subject aircraft from the market in reliance on Purchaser's agreement to purchase exposed Seller to risk of loss of the opportunity to sell the aircraft in the event Purchaser defaults. It then provides that, in the event Purchaser fails to purchase and thus breaches the contract, Purchaser must forfeit its deposit of $100,000 as "liquidated damages" and waive any claim for the return of that money. In short, the words of the section, taken literally, address only what *Purchaser* will concede in the event of its breach and do not expressly address the question whether Seller agrees to liquidated damages of $100,000 in that circumstance. The section does not explicitly purport to restrict the remedies available to Seller if Purchaser breaches.[2] The district court, perhaps because the term "liquidated damages" is commonly used in contracts in which *both sides* agree that damages shall be neither more nor less than an agreed amount, interpreted the clause to mean that both sides agreed to liquidated damages, notwithstanding that the contract recites only Purchaser's agreement to that provision. But it is at least reasonably possible that the contract was intended

---

[2] The words "[Purchaser] . . . agrees that the amount of the Deposit shall constitute liquidated damages" arguably have a different meaning from "The parties agree that the amount of the Deposit shall constitute liquidated damages," or simply "The amount of the Deposit shall constitute liquidated damages."

to mean only what it said and not to imply parallel agreement of Seller to what Purchaser explicitly agreed to. Therefore, we do not agree that Section 2.2 can be read as an *unambiguous* statement that Seller consented to limit itself to damages of $100,000 to remedy a breach by Purchaser. We think that Section 2.2 can reasonably be interpreted to mean that, if Purchaser breaches and Seller cancels the contract,[3] Purchaser will not be entitled to the return of any part of its $100,000 deposit (even if the value of the helicopter had gone up), without saying anything about the extent of damages to which Seller may be entitled.

Because Section 2.2 is "reasonably . . . susceptible of different interpretations," we conclude that Section 2.2 is ambiguous. *AEP Energy Services Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 729 n.14 (2d Cir. 2010) (internal quotation marks omitted). Accordingly, we vacate the district court's judgment. On remand, the district court may not exclude appropriate extrinsic evidence on the ground that the contract was unambiguous.[4] *See Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir. 1983).

The judgment of the district court is hereby **VACATED**, and the matter **REMANDED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

---

[3] If Purchaser fails to purchase, Seller can cancel the contract pursuant to Section 3.1.1. *See* J.A. 14-15; 35-36 ("Upon [Purchaser's] default then [Seller] at its sole discretion has the right to cancel the Agreement in its entirety and the Deposit paid to the Escrow Agent, shall immediately be paid over to [Seller].").

[4] The district court found that the email written by the chief operating officer of Purchaser did not "create[] an enforceable contractual obligation" because it apparently was never sent to Seller. *Aircraft Services*, No. 09-cv-8129, slip op. at 22. We note that, even though the email was not sent to Seller and does not create a binding contractual obligation, it may nonetheless constitute extrinsic evidence of how Purchaser understood (or misunderstood) Section 2.2 and may therefore be probative of Purchaser's intent.