NEW YORK STATE ENERGY RESEARCH AND DEVELOPMENT AUTHORITY, Plaintiff-Appellee,

v.

NUCLEAR FUEL SERVICES, INC., and Getty Oil Company, Defendants-Appellants.

No. 531, Docket 81-7736.

United States Court of Appeals, Second Circuit.

Argued Nov. 20, 1981.

Decided Dec. 8, 1981.

Clarence T. Kipps, Jr., Washington, D. C. (Miller & Chevalier, Chartered, Alan C. Brown, Washington, D. C., Nixon, Har-

grave, Devans & Doyle, William D. Eggers, Jr., Rochester, N. Y., of counsel), for defendant-appellant Nuclear Fuel Services, Inc.

William I. Schapiro, Buffalo, N. Y. (Jaeckle, Fleischmann & Mugel, Buffalo, N. Y., Henry W. Killeen, III, Buffalo, N. Y., of counsel), for defendant-appellant Getty Oil Co.

Philip H. Gitlen, Albany, N. Y. (Whiteman Osterman & Hanna, John J. Cangilos, Albany, N. Y., of counsel), for plaintiff-appellee New York State Energy Research and Development Authority.

Carmine J. Clemente, Gen. Counsel, Albany, N. Y. (Howard A. Jack, Deputy Gen. Counsel, Albany, N. Y., of counsel), for plaintiff-appellee New York State Energy Research and Development Authority.

Before LUMBARD and NEWMAN, Circuit Judges, and ZAMPANO,* District Judge.

LUMBARD, Circuit Judge:

Since 1963, Nuclear Fuel Services, Inc. (NFS)[1] has been the tenant of a 3,354 acre tract of land (the Center), owned by the New York State Energy Research and Development Authority (Authority), in West Valley, thirty miles south of Buffalo. On October 20, 1981, the Western District of New York granted partial summary judgment to the Authority, and ordered NFS forthwith to vacate 158.8 acres of the leased land to the United States Department of Energy (DOE). Pending decision of NFS's appeal, we have stayed the judgment which is before us by reason of the district court's

Rule 54(b) declaration that this partial summary judgment is final.[2] We disagree with the district court's finding that there are no material issues of fact relating to the Authority's right under the lease to transfer the Center to DOE and we reverse and remand for trial of those issues.

The rights and obligations of the parties here are governed by a Lease and a Waste Storage Agreement, which were executed concurrently on May 15, 1963 (together referred to as the "Agreements"). Under the Agreements, the provisions of which total 199 pages, NFS was to construct and operate for the Authority facilities for receiving spent nuclear fuel, for storing liquid high level radioactive wastes, and for burying solid low level radioactive wastes. In addition, for its own account, NFS was to construct a plant for reprocessing spent nuclear fuel elements. The Lease was to terminate on December 31, 1980, unless renewed. It appears that, for some years prior to December, 1980, the parties have been in disagreement about numerous matters and their resulting obligations, the details of which are irrelevant to this decision. Suffice it to say, NFS wishes to terminate its possession, and all responsibilities thereafter, but it insists that the Agreements require the Authority to accept its surrender of possession and responsibility. On the other hand, the Authority insists that it has the right to compel NFS to deliver possession of a particular portion of the Center, including the high level liquid waste and reprocessing facilities, to DOE[3] without any acceptance of NFS's surrender.

* Honorable Robert C. Zampano, United States District Court for the District of Connecticut, sitting by designation.

1. In 1969, Getty Oil Co. acquired all the stock of Nuclear Fuel Services, Inc. Getty was named a codefendant in this action on a theory of derivative liability.

2. We need not decide whether the issue resolved by the partial summary judgment is sufficiently independent of other matters raised by the Authority's complaint to be a separate claim, appropriate for Rule 54(b) certification, since the district court's judgment, even if not

certifiable as a final judgment, contains an injunction appealable under 28 U.S.C. § 1292(a)(1).

3. The Department of Energy has agreed with the Authority to solidify the 600,000 gallons of high level radioactive wastes stored at the West Valley site and transport the solidified wastes to a permanent disposal site. Work on the solidification was scheduled to begin on October 1, 1981, but has been delayed by the present dispute between NFS and the Authority. The agreement with DOE does not cover the low level waste burial site.

On December 24, 1980, NFS sued the Authority · in the District Court for the Northern District of New York for enforcement of its right to have the Authority accept its surrender of possession. Six days later, on December 30, the Authority sued NFS in the Cattaraugus County Supreme Court to enjoin NFS from abandoning the low level storage facilities at the Center and directing it to continue to maintain those facilities. On that same day, the state court issued a temporary restraining order granting the Authority the relief sought. NFS promptly removed the state action to the Western District on January 7, 1981, on the ground of diversity jurisdiction. Sometime thereafter NFS's Northern District suit was transferred to the Western District, pursuant to 28 U.S.C. § 1404.[4]

The Authority's claim, as set out in a lengthy amended complaint listing 32 causes of action, seeks damages and specific performance to require NFS to remain at the Center and perform its alleged obligations under the Agreement. On September 30, 1981, the Authority shifted ground and moved for partial summary judgment to require NFS to vacate a portion of the Center to DOE.[5] The district court granted the motion, holding that the Authority had the right under the New York law of property to repossess the Center upon the termination of the Lease on December 31, 1980, and that no reasonable interpretation of the Agreements supported NFS's claim that the Authority was required to accept NFS's surrender of possession. We disagree.

Provision is made for transfer of possession of the Center in Articles 26 and 27 of the Lease. Article 26 provides:

> Lessee, upon any expiration or earlier termination or cancellation of this Lease, will peaceably vacate, yield up and surrender to the Authority the Leased Premises, the Leased Facilities, and Lessee's Improvements....

Article 27 states that no surrender shall be valid or effective unless required by the provisions of the Lease or agreed to and accepted by the Authority in writing. The parties provided for transfer of responsibility for the radioactive wastes stored at the Center in the Waste Storage Agreement, section 3.04, which states that:

> upon any cancellation or termination of the Lease, and in any event at the end of the initial term ... NFS will surrender, and the Authority will assume, full responsibility for perpetual operation, surveillance, maintenance, replacement and insurance of the then existing High Level Storage Facilities....

The district court reasoned that as the Authority had the right to receive physical possession from NFS upon termination of the Lease, and that as there was no reason to believe that the Authority's right to receive possession could not be exercised by directing that it be passed to another entity, the Authority had the right to require NFS to give possession of the 3338.5 acres of the Center to DOE. Judge Elfvin wrote:

> Except for the bare language of these provisions, defendants - have indicated nothing in either the words or underlying intention of the parties' agreements which invites the conclusion that this possessory right of NYSERDA cannot be exercised by directing that possession be passed to another entity otherwise legally authorized to physically possess the Center, such as the DOE.

The standard for summary judgment is that there be no material issue of fact and that the movant be entitled to judgment as a matter of law. The material issue of fact alleged here is the intent of the parties concerning transfer of the Center upon termination of the Lease. NFS asserts that the intent of the parties was that possession of and responsibility for the Center and the radioactive wastes stored there would remain united, and that upon termination, the

---

4. No judgment has yet been rendered in the suit brought by NFS, which is still pending.

5. The Authority sought to evict NFS from the 158.8 acres on which the high level liquid wastes and reprocessing facilities are located as well as the surrounding buffer zone; the Authority apparently wants NFS to retain possession of and responsibility for the 15.5 acre low level waste burial site.

Authority would accept NFS's surrender and assume responsibility for the perpetual care of the wastes.[6] On this motion for summary judgment, the burden lay with the movant Authority to show that this was not a reasonable interpretation of the Agreements and that the Agreements unambiguously entitled the Authority to transfer possession to DOE. *See Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317 (2d Cir. 1975). If NFS's interpretation of the Agreements is not unreasonable, then summary judgment must be denied. *See Home Insurance Co. v. Casualty & Surety Co.,* 528 F.2d 1388 (2d Cir. 1976). As we cannot say that NFS's interpretation of the parties' intent is unreasonable, we reverse.

The bare words of Articles 26 and 27 of the Lease would seem to indicate that the surrender of possession must be only to the Authority, that surrender must be of the whole Center, and that the Authority must accept surrender. Article 26 says that NFS "upon any expiration" shall "surrender to the Authority" the "Leased Premises, the Leased Facilities, and Lessee's Improvements." Article 27 says that no surrender "shall be valid or effective . . . unless agreed to and accepted in writing by the Authority." The Waste Storage Agreement parallels these provisions, providing that upon expiration of the Lease, the Authority will accept NFS's surrender of responsibility for the radioactive wastes at the Center. A reasonable interpretation of this language, suggests NFS, is that the parties intended to have the party in possession bear the responsibility for maintenance, operation, and safety. NFS urges that to turn possession over to DOE as

ordered would leave NFS with contractual responsibility for the operation and maintenance of the Center while it had no access to the Center.[7] At the very least, we find there is a serious ambiguity regarding the surrender of possession. The burden was on the Authority to show that it had a clear right to the transfer of possession to a third party, instead of itself accepting surrender of and responsibility for the Center. This burden the Authority has not carried. We therefore reverse and remand for a trial of the issue of the parties' intent regarding transfer of possession of the Center at the termination of the Lease.

The record shows the concern of all the parties for the prompt disposal of the large quantity of high level liquid radioactive wastes and low level solid radioactive wastes which are stored at the Center. We trust that the district court will give preferred early attention to the decision of the issues raised by the parties so that responsibility for the Center and the nuclear wastes thereon may be determined and possession taken accordingly. The transcendent need for maximum safety to the public in dealing with nuclear wastes should move the parties to cooperate toward an early resolution of their disputes.

Reversed and remanded.

---

**6.** NFS agrees that if it has defaulted under the Agreements, and is found not to have left the Center in the condition promised, then it would be liable to the Authority for damages, notwithstanding the Authority's acceptance of NFS's surrender.

**7.** Even if another provision of the Lease, section 31.01, permits the Authority to transfer the Center to a third party, who shall thereafter be substituted "with the same force and effect as the Authority," that provision does not provide an unambiguous answer to NFS's claim that its possession cannot be ended without a concurrent termination of its continuing responsibility other than damages. Nor do the Agreements unambiguously make the issue of NFS's responsibility after termination of the Lease "entirely severable" from its right of possession, as the district court ruled in granting partial summary judgment. NFS is entitled to plenary consideration of its claim that it may not be required to give up possession while subject to further litigation concerning any continuing responsibilities.