**In re FINLEY, KUMBLE, WAGNER, HEINE, UNDERBERG, MANLEY, MYERSON, & CASEY, Debtor.**

**Skillman E. SIEWERT, Claimant–Appellant,**

**v.**

**Arthur H. CHRISTY as Trustee of the Finley Kumble et al. Malpractice Insurance Trust, Appellee.**

United States District Court, S.D. New York.

Oct. 3, 1995.

Skillman E. Siewert, Atlanta, GA, appellant pro se.

Christy & Viener, New York City (John F. Cambria, Salvatore A. Santoro, Frank E. Derby, of counsel), for appellee.

## OPINION and ORDER

KEENAN, District Judge.

Appellant Skillman E. Siewert appeals two orders of the Honorable Prudence B. Abram of the United States Bankruptcy Court for the Southern District of New York in *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 88 B 10377 (PBA). First, Siewert appeals an order dated August 19, 1994 (the "Disallowance Order") which granted summary judgment and thereby disallowed, pursuant to 11 U.S.C. § 502(a), Siewert's malpractice claim against the debtor Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey (the "Debtor"), 192 B.R. 342. Second, Siewert appeals an order dated November 14, 1994 (the "Reconsideration Order") which denied Siewert's motion for reconsideration or reargument of the Disallowance Order. Siewert requests that this Court withdraw the reference to the Bankruptcy Court of what he characterizes as his personal injury claim and further requests that that claim be tried in the District Court.

Appellee Arthur H. Christy (the "Trustee"), as Trustee of the Finley Kumble et al. Malpractice Insurance Trust (the "Trust") opposes those appeals and the requested relief. For the reasons that follow, the appeals and requested relief are denied.

## BACKGROUND

### I. The Finley, Kumble Bankruptcy

On February 24, 1988, an involuntary petition for liquidation under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") was filed against the Debtor in the Bankruptcy Court. By Order dated March 4, 1988, the Bankruptcy Court converted the Chapter 7 case to a Chapter 11 case under the Bankruptcy Code. On March 7, 1988, the Bankruptcy Court approved the appointment of Francis H. Musselman as Chapter 11 Trustee of the Debtor. Musselman was succeeded by Albert Togut as Trustee. The Bankruptcy Court also appointed a Malpractice Claimants' Representative (the "Representative"), Arthur H. Christy, whose duties included reviewing and objecting to malpractice claims. Christy is authorized to be substituted for the Chapter 11 Trustee or the Debtor in all actions in respect of Disputed Malpractice Claims.

### II. The Renaissance Litigation

Siewert, a certified public accountant, is President, Registered Principal, and majority stockholder of Skillman Siewert Incorporated ("SSI"), a registered securities broker/dealer and a member of the National Association of Securities Dealers, Inc. In November 1985, SSI entered into broker/dealer sales agreements with Renaissance Investment Corporation ("Renaissance")[1] to market shares in the real estate limited partnerships known as Granada, 696 Peachtree ("Peachtree") and St. Andrews (collectively, the "Sales Agreements"). Renaissance hired the Debtor to serve as special securities and tax counsel and to prepare private placement memoranda ("PPMs") for the Granada and Peachtree partnerships. Renaissance also hired Atlanta counsel for local real estate matters. The PPMs prepared by Debtor for Peachtree and Granada did not disclose any material judgments, liens, claims, or other proceedings against Renaissance or the partnerships. Unfortunately, there turned out to be many such encumbrances.

By the middle of 1986, Granada and Peachtree defaulted on their construction and rehabilitation loans. As a result, their lenders foreclosed on the subject properties. In 1987, various individual investors commenced actions against Renaissance, its related entities, the broker/dealers (including SSI and Siewert personally) and various Renaissance legal and financial advisors, including Debtor, in the United States District Court for the Northern District of Georgia (the "Renaissance Litigation"). The plaintiffs alleged that defendants deliberately failed to disclose the true financial and legal position of Renaissance. Plaintiffs also alleged violations of Section 10(b) of the Securities Exchange Act of 1934, common law fraud, and violations of the Georgia securities laws. The primary allegations against Siewert were that, although he represented to the investors that he had performed due diligence on all offerings, he either failed to discover or fraudulently concealed the condition of Renaissance. Plaintiffs' allegations against the Debtor were that Debtor, as special securities counsel, knew or should have known of the legal and financial state of Renaissance and the partnerships and that Debtor allowed Granada and Peachtree transactions to close despite irregularities and unfulfilled closing conditions. That litigation was stayed against the Debtor in early 1988. Siewert filed his individual bankruptcy proof of claim on July 6, 1988.

Plaintiffs were granted summary judgment on their claims against Renaissance and its principals. Plaintiffs' claims against the Debtor were settled. That settlement was allowed by the Bankruptcy Court on February 3, 1992. After trial, on March 15, 1993, Siewert was held strictly liable under Georgia securities law to the investors to whom he individually had sold Renaissance securities because of inadequate disclosure in the Granada and St. Andrews offerings. Default judgment was entered against SSI in that litigation.

### III. Siewert's Claim

Siewert, in his proof of claim, alleged that the Debtor knew or should have known the

---

1. Renaissance was the general partner for several real estate limited partnerships formed to acquire, renovate and operate historic or preservation-worthy real estate in the Atlanta area.

truth about Renaissance's financial and legal situation and that Debtor therefore acted fraudulently or negligently in preparation of the PPMs. Thereafter, Siewert relied to his detriment upon the PPMs prepared by the Debtor for the Peachtree and Granada offerings, and thus Siewert claims that the Debtor is liable to him for malpractice. Siewert seeks several million dollars from the fund for his business losses and litigation-related expenses.

## IV. Disallowance of Siewert's Claim

On March 3, 1992, Christy, in his capacity as Representative with respect to Disputed Malpractice Claims, moved to disallow Siewert's claim for legal malpractice on the grounds that the Debtor owed no duty to Siewert, a selling broker/dealer, and as a matter of law Siewert could not sustain his claim of legal malpractice. The Bankruptcy Court held two hearings on the issue and on July 15, 1994, after converting the motion into a motion for summary judgment, the Bankruptcy Court rendered its decision granting the Trustee summary judgment. The decision was entered as the Disallowance Order.

On September 30, 1994, Siewert filed his motion for reconsideration or reargument. That motion was denied in all respects on October 25, 1994 and a Reconsideration Order embodying that decision was entered on November 14, 1994.

## DISCUSSION

### I. Standard Of Review

■ With respect to Siewert's appeal from the Disallowance Order, the Bankruptcy Court's grant of summary judgment is subject to *de novo* review. *See In re Chateaugay Corp.*, 104 B.R. 637, 642 (S.D.N.Y. 1989). With respect to Siewert's appeal from the Reconsideration Order, the Bankruptcy Court's denial of reconsideration is reviewable only for abuse of discretion. *See, e.g., Altman v. Connally*, 456 F.2d 1114 (2d Cir. 1972) (applying abuse of discretion standard to appeal from decision on motion to vacate or amend judgment).

## II. The Disallowance Order

In reviewing the Disallowance Order *de novo,* the Court concludes that it was correctly decided.

### A. Summary Judgment Standards

■ This Court may grant summary judgment only if there is no genuine dispute as to any material fact and the moving party is thus entitled to judgment as a matter of law. *See, e.g., Silver v. City Univ. of N.Y.,* 947 F.2d 1021, 1022 (2d Cir.1991); *Montana v. First Fed. Sav. & Loan Ass'n,* 869 F.2d 100, 103 (2d Cir.1989); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Falls Riverway Realty, Inc. v. Niagara Falls,* 754 F.2d 49, 54 (2d Cir.1985). The role of the Court on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight,* 804 F.2d at 11. *See, e.g., Twin Lab. Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990); *Montana,* 869 F.2d at 103; *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989).

■ The movant bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the movant meets this initial burden, the party opposing the motion must then demonstrate that there exists a genuine dispute as to the material facts. *Id.; see also Silver,* 947 F.2d at 1022; *Greater Buffalo Press, Inc. v. Federal Reserve Bank,* 866 F.2d 38, 42 (2d Cir.), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989). The opposing party may not solely rely on its pleadings, on conclusory factual allegations or on conjecture as to the facts that discovery might disclose. *See, e.g., Gray v. Town of Darien,* 927 F.2d 69, 74 (2d Cir.), *cert. denied,* 502 U.S. 856, 112 S.Ct. 170, 116 L.Ed.2d 133 (1991). Rather, the opposing party must

present specific evidence supporting its contention that there is a genuine material issue of fact. *See, e.g., Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553; *Twin Lab.*, 900 F.2d at 568; *Montana*, 869 F.2d at 103; *Knight*, 804 F.2d at 12; *L & L Started Pullets, Inc. v. Gourdine*, 762 F.2d 1, 3–4 (2d Cir.1985). To show such a "genuine dispute," the opposing party must come forward with enough evidence to allow a reasonable jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Cinema North Corp. v. Plaza at Latham Assoc.*, 867 F.2d 135, 138 (2d Cir.1989). If "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," then summary judgment must be denied. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9–10 (2d Cir.1983) (citing *New York State Energy Research & Dev. Auth. v. Nuclear Fuel Servs., Inc.*, 666 F.2d 787, 790 (2d Cir.1981)).

## B. Arguments

Siewert essentially contends that the Bankruptcy Court committed error in the Disallowance and Reconsideration Orders by (1) improperly granting summary judgment in light of disputed facts, (2) refusing to consider his final memorandum dated May 21, 1993, (3) depriving him of due process, (4) denying him the same procedures afforded to other malpractice claimants, (5) improperly finding that he was not an intended beneficiary of Finley Kumble's legal advice, (6) improperly denying his claim which was identical to another claim that was allowed, and (7) improperly exercising jurisdiction over his personal injury claim, which is a non-core proceeding subject to withdrawal from the Bankruptcy Court. Many of these asserted points of error are beyond the scope of a proper appeal—specifically in light of the Court's May 18, 1995 Order which distinctly directed the parties to limit their submissions to the propriety of the summary judgment and reconsideration orders. The Court will, in the main, limit its discussion to those issues.

The Bankruptcy Court granted summary judgment when it found that Siewert could not maintain a claim for malpractice. Specifically, the Bankruptcy Court found that Siewert could not maintain a malpractice claim because he was neither a client of the Debtor nor within the class of third-party beneficiaries recognized under Georgia law as reasonably expected to rely on the Debtor's representations. Those representations were found by the Bankruptcy Court to be made in the context of a private securities placement for the benefit of outside investors—not insiders like Siewert. The Bankruptcy Court further found that Siewert, as a broker/dealer, had an independent and non-delegable duty of due diligence to undertake his own investigation.

The issue for the Court therefore is whether Siewert makes out a malpractice claim enforceable against the Debtor sufficient to withstand summary judgment.

## C. Analysis

### 1. Malpractice Claim

 In order to make out a claim for malpractice under Georgia law, a professional must have breached a duty of care, and there must be a resulting injury that has a causal connection to that breach. *See Whitehead v. Cuffie*, 185 Ga.App. 351, 352, 364 S.E.2d 87, 89 (1987) (citation omitted). Any professional, including an attorney,

who suppl[ies] information during the course of his or her business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it so be used. This liability is limited to a foreseeable person or class of persons for whom the information was intended either directly or indirectly. If it can be shown that the representation was made for the purpose of inducing third parties to rely and act upon the reliance, then liability to the third party can attach.

*Badische Corp. v. Caylor,* 257 Ga. 131, 133, 356 S.E.2d 198, 200 (1987).

█ The Bankruptcy Court below found that Siewert, as a broker/dealer, was outside that duty of care. This Court agrees. Under Georgia law, a broker/dealer owes outside investors an independent and non-delegable duty to discover and disclose those facts that are reasonably ascertainable. *See Sanders v. John Nuveen & Co.,* 619 F.2d 1222, 1227 (7th Cir.1980), *cert. denied,* 450 U.S. 1005, 101 S.Ct. 1719, 68 L.Ed.2d 210 (1981). The Second Circuit has examined this independent duty, concluding that brokers and salesmen

> cannot deliberately ignore that which he has a duty to know and recklessly state facts about matters of which he is ignorant. He must analyze sales literature and must not blindly accept recommendations made therein ...

*Hanly v. Securities and Exchange Commission,* 415 F.2d 589, 596 (2d Cir.1969).

> ... He must disclose facts which he knows and those which are reasonably ascertainable. By his investigation he implies that a reasonable investigation has been made and that his recommendation rests on conclusions based on such investigation.

*Id.* at 597. The existence of this completely independent duty means that Siewert cannot have reasonably relied upon the Debtor's PPMs, which were prepared for the purpose of inducing investors to rely on the information contained therein. Siewert was not an investor. Siewert himself was not even a seller—he was merely an officer of SSI, which was the broker/dealer for the limited partnership interests. As a result, not only was Siewert not a reasonably foreseeable or intended beneficiary of that information, he had an independent duty to investigate on his own. As such, Siewert has no malpractice claim against the Debtor as a legal matter.

The possible existence of disputed facts has no bearing on this legal conclusion—Siewert's undisputed status as a broker/dealer is the only material fact to this determination and that status mandates this result.

█ Siewert, for the first time on appeal, produces various affidavits from people active in the Georgia securities industry that state that it was reasonable and customary for Siewert, as a broker/dealer, to have relied on the PPMs. These affidavits were not available to the Bankruptcy Court below and are not appropriate for consideration on this appeal of the propriety of the Bankruptcy Court's orders.

█ The Bankruptcy Court was correct when it granted Christy's motion for summary judgment on the malpractice claim.[2] Siewert's appeal is therefore denied.

### 2. Remaining Issues

None of the remaining issues raised by Siewert affects the above conclusion. With respect to Siewert's allegation that the Bankruptcy Court failed to consider the May 21, 1993 submission, that is belied by the Disallowance Order itself, which explicitly referenced the May 21, 1993 submission as one of the papers that had been considered. The fact that the summary judgment decision does not explicitly reference that submission is of no moment.

█ Siewert's claim that he was denied due process because he was not afforded discovery in the Bankruptcy Court was never raised in the Bankruptcy Court. Over a year before rendering the Disallowance Order the Bankruptcy Court notified the parties that it was treating the motion to disallow Siewert's claim as a motion for summary judgment. Following that notice, the parties submitted supplemental papers. By his own admission, Siewert never requested discovery from the

---

**2.** The Bankruptcy Court also considered and rejected the allowability of Siewert's claim as one for common law fraud. The Bankruptcy Court concluded that Siewert failed to offer proof of either scienter or justifiable reliance, two of the five essential elements of common law fraud.

After a thorough review, the Court agrees with the determination below. Other than conclusory allegations, Siewert produces no evidence that

the Debtor had the fraudulent intent necessary for scienter. Neither does Siewert produce evidence that his reliance was justified. Indeed, this Court has already thoroughly discussed Siewert's independent duty which negates any claim of justifiable reliance. As a result, to the extent the claim is for common law fraud, it was correctly disallowed on this basis as well.

Bankruptcy Court until August 18, 1994. *See* Letter to Court from Siewert dated September 12, 1995, at 1. Therefore, having failed to raise the issue before the Disallowance Order was issued, it cannot now be raised on appeal.

■ Siewert's argument that his claim is identical to the claim of Richard Traweek, which was allowed, is also without merit. Traweek was a client of the Debtor and the Debtor therefore owed a duty to him despite the fact that Traweek had his own independent duty as an underwriter. That claim is therefore not similar to Siewert's claim.

■ Finally, Siewert's assertion that his claim is a non-core proceeding over which the Bankruptcy Court lacks jurisdiction also fails. Siewert's malpractice claim is not a non-core personal injury claim subject to withdrawal from the Bankruptcy Court. *See* 28 U.S.C. §§ 157(b)(2) and (b)(5). Malpractice is not a personal injury tort claim in the traditional sense of the word. *See, e.g., In re Cohen*, 107 B.R. 453, 455 (S.D.N.Y.1989) (statutory discrimination claim not a "personal injury tort" in Bankruptcy Court exclusion sense); *In re Vinci*, 108 B.R. 439, 442 (Bankr.S.D.N.Y.1989) (tort claim "without trauma or bodily injury is not within statutory exception for a personal injury tort."). Siewert's claims of emotional damages are, while not inconsequential to Siewert, incidental and are not sufficient to transform this business tort into a personal injury tort. *See, e.g., Bertholet v. Harman*, 126 B.R. 413, 415 (Bankr.D.N.H.1991) (humiliation and lost reputation resulting from a business tort do not rise to the level of a personal injury tort).

### III. The Reconsideration Order

While Siewert purports to challenge the Reconsideration Order, he does not identify any mistakes or abuses of discretion encompassed in that Order. In reviewing the Reconsideration Order, the Court concludes that there was no abuse of discretion by the Bankruptcy Court.

### *CONCLUSION*

The Court hereby affirms the Disallowance and Reconsideration Orders of the Bankruptcy Court. The appeal is dismissed in its entirety. The Court orders this case closed and directs the Clerk of Court to remove it from the active docket.

**SO ORDERED.**