**In re CIENA CAPITAL LLC f/k/a Business Loan Express LLC, et al., Debtors.**

**Richard E. Ivers Jr., Appellant,**

**v.**

**Ciena Capital LLC, et al., Appellees.**

**Bankruptcy No. 08–13783 (AJG). No. 10 Civ. 5450 (VM).**

United States District Court, S.D. New York.

Nov. 18, 2010.

**48**

Richard E. Ivers, Jr., Chandler, AZ, pro se.

Richard Patrick Norton, Robert Anthony Rich, Hunton & Williams, LLP, New York, NY, for Appellees.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Pro se appellant Richard E. Ivers Jr. ("Ivers") appealed, pursuant to 28 U.S.C. § 158(a) and Rules 8001(a) and 8002(a) of the Federal Rules of Bankruptcy Procedure, from two orders issued by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Those orders denied Ivers's claims for money he asserts he was owed by appellee Ciena Capital Funding LLC (formerly known as BLX Capital, LLC) ("BLX") and specifically consist of: (1) a disallowance order, dated March 17, 2010 (the "Bankruptcy Court Disallowance Order"); and (2) a reconsideration order, dated May 14, 2010 (the "Bankruptcy Court Reconsideration Order") (collectively, the "Bankruptcy Court Orders"). Ivers's submissions to the Court, when read liberally and construed in his favor, present an appeal of several factual findings by the Bankruptcy Court. After reviewing the relevant record and the parties' submissions, the Court AFFIRMS the Bankruptcy Court Orders for the reasons stated below.

## I. BACKGROUND[1]

### A. PROCEDURAL HISTORY

The instant appeal stems from Ivers's breach of contract action against BLX in

1. The factual summary herein derives primarily from the following documents: Ivers's Appeal Brief, dated August 12, 2010 ("Ivers's Appeal Brief"); Brief of Appellees Ciena Capital LLC and Affiliated Debtors and Debtors–in–Possession, dated September 30, 2010 ("Debtors' Opposition Brief"); Appellant Reply to Appellee Brief, dated October 13, 2010 ("Ivers's Reply Brief"); the Bankruptcy Court Opinion, dated March 17, 2010 (the "Bankruptcy Court Disallowance Opinion"), the Bankruptcy Court Orders, the documents enumerated by Ivers in his Designation of Contents of the Record on Appeal, dated June 8, 2010, and the documents listed by Debtors in Appellees' Counterdesignation of Items to

the Superior Court of Arizona in Maricopa County, Arizona (the "Breach of Contract Action"). On September 30, 2008, ten companies (the "Debtors")[2] that included BLX filed for protection under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Ivers's Breach of Contract Action was automatically stayed in light of the Debtors' bankruptcy proceedings.

On December 12, 2008, Ivers filed a proof of claim (the "Claim"), asserting a general unsecured claim against the Debtors for $9,792,536.05 based on the damages he sought in his Breach of Contract Action. On July 22, 2009, the Debtors filed a verified objection (the "Objection") to the Claim pursuant to section 502 of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure. The Debtors' position, among others, was that conditions precedent to the operative legal obligations necessary for a breach of contract to have transpired never occurred.

After the parties submitted briefing on the Objection, the Bankruptcy Court held oral argument on February 17, 2010. A month later, on March 17, 2010, the Bankruptcy Court issued the Bankruptcy Court Disallowance Opinion along with a separate, one-page Bankruptcy Court Disallowance Order granting the Objection and disallowing Ivers's Claim. Ivers moved for reconsideration. On May 14, 2010, the Bankruptcy Court issued the Bankruptcy Court Reconsideration Order, denying Ivers's motion seeking reconsideration be-

cause it found "no basis in law or in fact to reconsider the [Bankruptcy Court Disallowance Order.]" (Bankruptcy Court Reconsideration Order at 1.) On May 28, 2010, Ivers filed his notice of appeal, seeking review of the Bankruptcy Court Orders.

## B. *THE FACTS RELATING TO THE BREACH OF CONTRACT ACTION*

Ivers's Breach of Contract Action and the instant appeal are ultimately traceable to transactions in 2005 in which he borrowed money from BLX to purchase and renovate a convenience store in Mesa, Arizona, located at 1224 N. Gilbert Road (the "Commercial Property"). On or about April 29, 2005, Ivers, doing business as Sparky's Deli and Convenience Store, as borrower, and BLX, as lender, closed on a senior loan (the "Senior Loan") agreement and a junior loan (the "Junior Loan") agreement (collectively, the "Loan Agreements") in exchange for, among other consideration, a security interest in the Commercial Property and a promissory note. The Senior Loan was in the amount of $363,730.00 and the Junior Loan was for $254,607.00. Despite Ivers's present Claim for $9,792,536.05, the contract that he alleges was breached involves loans totaling approximately $600,000.

On March 16 and 21, 2005, before the closing on the Loan Agreements, BLX delivered two commitment letters (the "Pre–Closing Commitment Letters") to Ivers,

be Included in the Record on Appeal Filed by Richard E. Ivers, Jr. of Order Granting Debtors' Verified Objection to Claim No. 81 and Order Denying Motion for Reconsideration of Ruling Granting the Debtors' Verified Objection to Claim No. 81, dated July 13, 2010. Except where specifically referenced, no further citation to these sources will be made.

**2.** The Debtors are the following affiliated companies in the jointly-administered Chap-

ter 11 Case No. 08–13783 pending in the Bankruptcy Court: BLX; Capital LLC f/k/a Business Loan Express LLC ("Ciena"); BLX Commercial Capital, LLC; Business Loan Center, LLC; BLX Holdings Corp.; BLX Real Estate, LLC; BLX Commercial Capital Real Estate, LLC; BLC Real Estate (Berlin), LLC; BLC Real Estate (UPC Petroleum), LLC; and BLC Real Estate (Texas), LLC.

which delineated the terms and conditions of the two proposed loans. Under the Pre–Closing Commitment Letters, a Certified Development Company (the "CDC") that is licensed by the Small Business Administration (the "SBA") would fund the Junior Loan. The Pre–Closing Commitment Letters expressly stated that the following four conditions must occur prior to closing:

8. SBA Debenture Authorization must be received, reviewed and acceptable to [BLX]. Closing of the debenture will be simultaneous with this loan's closing, with final funding within 180 days. The CDC must certify in writing to [BLX] that all conditions necessary for the closing by the CDC and the issuance and sale of the Debenture have been met including, but not limited to, satisfaction and completion of all of the items of responsibility of the CDC in the "It is CDC's Responsibility to" section of the Authorization for Debenture Guarantee.

9. [BLX] shall have received all necessary SBA approvals, guaranties and authorizations with respect to the loan, and such shall remain in effect on the date of closing.

10. The CDC must certify in writing to [BLX] that all conditions necessary for the closing by the CDC and the issuance and sale of the Debenture have been met including, but not limited to, satisfaction and completion of all the items delineated as items of responsibility of the CDC in the "It is CDC's Responsibility to" section of the Authorization for Debenture Guarantee.

11. The [BLX] loan closing must take place simultaneously with or subsequent to the [Junior Loan] closing by the CDC with final funding within 180 days.

(*Id.* at 6–7 n. 5.)

Before closing on the Senior Loan and Junior Loan, BLX informed Ivers that CDC would reduce the amount of the loans. Additionally, the CDC sent Ivers a letter stating that the amounts of the loans governed by the Pre–Closing Commitment Letters had been decreased. Ivers subsequently closed on the Loan Agreements, independent of the Pre–Closing Commitment Letters. By September 9, 2005, BLX had disbursed to Ivers a total of $601,485.23 under the Loan Agreements.

In the summer of 2005, even before BLX had disbursed the $601,485.23, Ivers failed to make complete and timely monthly payments that were required under the Loan Agreements. Ivers also did not make payments due to contractors who had worked on the Commercial Property. As a result, several contractors filed mechanic's liens against that property in late 2005. In early December 2005, Ivers provided BLX with a check for $16,881.84 to reinstate his loan through the end of that month. The December 2005 payment was the last that Ivers submitted to BLX under the Loan Agreements. Ivers omitted to make his required payment in January 2006. On February 6, 2006, BLX provided Ivers with a notice of default pursuant to the Loan Agreements. Approximately one week later, Ivers closed his convenience store. CDC had never funded the Junior Loan.

On May 15, 2006, BLX instituted foreclosure proceedings on the Commercial Property. BLX then purchased its security interest through a credit of $600,320.00 at an uncontested foreclosure proceeding. On or about February 27, 2007, it subsequently sold the property at a loss for a total sale price of $480,000.00. BLX has not pursued a deficiency judgment against Ivers (or any other loan guarantor) under the Loan Agreements.

Two years after the foreclosure proceeding, Ivers filed the Breach of Contract Action. Specifically, Ivers's suit alleged

that BLX breached the Pre–Closing Commitment Letters by (1) failing to lend him the amount of money required under those letters; (2) not paying one of Ivers's contractors; and (3) omitting to pay 2005 property taxes in the amount of $3,480.90 on the Commercial Property. As the Bankruptcy Court noted, "[s]ignificantly, Ivers is alleging no breach under the Loan Agreements; his claims are based solely on BLX's alleged breach under the [Pre–Closing] Commitment Letters." (*Id.* at 5.)

## C. *THE FINDINGS AND CONCLUSIONS IN THE BANKRUPTCY COURT ORDERS*

The Bankruptcy Court disallowed Ivers's Claim against the Debtors, holding that "neither BLX nor Ivers had obligations to perform under the [the Pre–Closing Commitment Letters]" because "the conditions precedent [enumerated in those letters] were not satisfied." (*Id.* at 7.) The Bankruptcy Court stated that "when a contract is contingent on an express condition and that condition is not fulfilled, parties are excused from performance." (*Id.* at 6 (*citing Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 636 N.Y.S.2d 734, 660 N.E.2d 415, 421 (1995) for the proposition that "[e]xpress conditions are those imposed by the parties themselves.... They must be literally performed." (alteration omitted)).) The Bankruptcy Court identified "several conditions precedent" in "[t]he [Pre–Closing] Commitment Letters between BLX and Ivers" and stated that the non-occurrence of any one of them would preclude the contractual obligation of either party." (Bankruptcy Court Disallowance Opinion at 6.)

Applying this hornbook law to the facts here, the Bankruptcy Court concluded "that the [Pre–Closing] Commitment Letters created no enforceable legal obligation of the parties in this case as the multiple conditions precedent in the [Pre–Closing Commitment] Letters were never satisfied." (*Id.* at 5.) The Bankruptcy Court made factual findings as to the non-occurrence of four conditions precedent, stating:

> It is *undisputed* that the four conditions precedent relating to SBA approval and [the] CDC certification failed to occur. Specifically, [the] CDC failed to close on the Junior Loan or reimburse BLX as interim lender because Ivers defaulted on the [Loan Agreements] shortly after signing [them]. Further, [the] CDC changed the loan amount in [one of the Pre–Closing Commitment Letters] per a letter dated March 31, 2005, stating that, "[t]he amount of the project has slightly decreased due to a lowering bank fee. The amounts of the loans have decreased and the borrower injection has increased and [there is] a lower appraisal value on the [Commercial Property].…" Ivers was notified, prior to entering into the Loan Agreements, that the loan amounts have been reduced.

(*Id.* at 6–7 (ellipsis in original) (emphasis added) (citation omitted).) Accordingly, it granted the Debtors' Objection and issued the Bankruptcy Court Disallowance Order. Further, the Bankruptcy Court denied Ivers's motion for reconsideration of the Bankruptcy Court Disallowance Order.

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

 On appeal from a disallowance order, the Court accepts the Bankruptcy Court's findings of fact unless clearly erroneous while reviewing its conclusions of law de novo. *See Momentum Mtg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir.1994); *see also* Fed. R. Bankr.P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be

set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). The burden of demonstrating that the Bankruptcy Court's findings of fact are clearly erroneous rests squarely on the shoulders of the appellant. *See In re Eljay Jrs., Inc.*, 123 B.R. 961, 963 (S.D.N.Y.1991) ("Where appellant seeks review of a Bankruptcy Court's findings of fact on appeal, it carries the burden of proving that the findings are clearly erroneous."). "In reviewing findings for clear error, [the appellate court is] not allowed to second-guess either the trial court's credibility assessments or its choice between permissible competing inferences. Even if the appellate court might have weighed the evidence differently, it may not overturn findings that are not clearly erroneous." *Ceraso v. Motiva Enters., LLC*, 326 F.3d 303, 316 (2d Cir. 2003) (*citing Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

## B. *IVERS'S APPEAL OF THE BANKRUPTCY COURT'S DISALLOWANCE ORDER*

 Ivers filed a statement of issues, dated June 28, 2010 (the "Statement of Issues"), in the Bankruptcy Court, but does not include a statement of issues in his Appeal Brief, or provide an argument section that addresses the issues raised in his Statement of Issues. The Court will read Ivers's submissions liberally because he is proceeding pro se, construing them to present issues on appeal and explaining his asserted basis for reversal.

Ivers purports to present seven bases for reversal on appeal:

1) Whether all (4) [sic] of the CDC Loan Approval Conditions [in the Pre–Closing Commitment Letters] were satisfied or not.

2) Whether there was a valid loan agreement in place because of the March 17 [sic], 2010 Opinion and Ruling.

3) Whether the Debtors had the right to proceed with these loans as conventional loans because of their claim and the court ruling the Appellant failed to satisfying [sic] that was part of the court [sic] March 17, 2010 Opinion and Ruling.

4) Whether the Debtors had a legal duty to perform once they proceeded with the loans after they claimed the (4)[sic] CDC loan conditions were not satisfied that was part of the courts [sic] March 17, 2010 Opinion and Ruling.

5) Whether the Debtors had a right to withhold payments to specific parties after disbursing other funds to them previously that would have satisfied the CDC loan conditions regarding the funding of the Junior Loan.

6) Whether there is documentation in the courts [sic] record that shows there were any legal issues on the property prior to September 17, 2005 that would support the Court [sic] March 17, 2010 opinion and ruling.

7) Whether there is evidence in the record that shows [Ivers] was in default with [his] loans as stated in the courts [sic] March 17, 2010 Opinion and ruling.

(*See* Statement of Issues.)

In setting forth these issues for appeal, Ivers appears to challenge the Bankruptcy Court's factual findings.[3] However, he

---

3. Ivers asserts that there is a paucity of evidence in the record to support the Bankruptcy Court Disallowance Order. (*See* Ivers's Moving Brief at 8; *id.* ("The Debtor supplied *NO EVIDENCE* to the court in support or

[sic] their claim or to support the March 17, 2005 Opinion and Ruling...." (emphasis, type face, and capitalization in original)).) Ivers asserts that "[t]he Bankruptcy Courts [sic] March 17, 2010 Opinion & Ruling was

fails to bring to this Court's attention any facts that would demonstrate that the Bankruptcy Court's findings were clearly erroneous or that it erred in concluding that the failure of conditions precedent resulted in a lack of any legally-enforceable obligation traceable to the Pre–Closing Commitment Letters. In fact, upon review of the record, the Court finds that the Bankruptcy Court's factual findings as to the failure of several conditions precedent—any one of which would individually sustain the Bankruptcy Court's conclusion—are well supported. For example, despite an express condition precedent that required the CDC to certify in writing that all conditions necessary to closing and funding were met, the Bankruptcy Court found that such written certification was never provided. Further, in the face of an express condition mandating that the CDC fund the Junior Loan, the CDC never closed on the Junior Loan and never reimbursed BLX for the Junior Loan amount because Ivers promptly defaulted on the Loan Agreements. Accordingly, the Court finds that the Bankruptcy Court's factual findings regarding non-occurrence of the conditions precedent are not clearly erroneous.

In sum, Ivers falls far short of carrying his burden on appeal; he has presented no compelling evidence to show that the Bankruptcy Court clearly erred in making these factual findings. Thus, reversal is unwarranted.

C. *IVERS'S APPEAL OF THE BANK-RUPTCY COURT RECONSIDERA-TION ORDER*

■ Ivers's appeal also seeks review of the Bankruptcy Court Reconsideration Or-

der. The Bankruptcy Court denied Ivers's motion for reconsideration of the Bankruptcy Court's Disallowance Order, stating that it found "no basis in law or in fact to reconsider the [Bankruptcy Court Disallowance Order.]" (*See* Bankruptcy Court Reconsideration Order at 1.) As a threshold, Ivers's Statement of Issues and his Appeal Brief argue for reversal only as to the Bankruptcy Court's Disallowance Order. Accordingly, the Court treats Ivers's appeal of the Bankruptcy Court Reconsideration Order as abandoned. *See Anti-Monopoly, Inc., v. Hasbro, Inc.,* 958 F.Supp. 895, 907 n. 11 (S.D.N.Y.1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue.").

■ Even if the Court reviewed the Bankruptcy Court Reconsideration Order, it would reject any alleged infirmity based on reasoning consistent with that found above. Ivers's Reply Brief here admits that his motion for reconsideration was simply an attempt to get the Bankruptcy Court to look again at the Bankruptcy Court Disallowance Order. (*See* Ivers's Reply Brief at 1 ("My appeal brief was based on the [Bankruptcy Court Disallowance Order] because it was the Bankruptcy Courts [sic] Ruling on my Proof of Claim. The Motion for Reconsideration on this Ruling was an attempt to get the judge to review and see the errors. He failed to do that [sic] forced me to file the Appeal of that Opinion and Ruling. The fact that I did not include the Motion for Reconsideration in my appeal is not relevant because that motion did not affect the bankruptcy courts [sic] ruling and the Motion for Reconsideration in my brief because they are the same issues.").) Thus,

<hr>

based on speculation and conjecture and not on the undisputed facts of this case or the evidence submitted to the court that supports those facts." (Ivers's Reply Brief at 1.) He

further contends that "the Bankruptcy Courts [sic] ruling stated the (4)[sic] CDC loan conditions were not satisfied. This conclusion is not correct." (Ivers's Reply Brief at 2).

the Court finds that, in moving for reconsideration, Ivers failed to direct the Court to new facts or law overlooked by the Bankruptcy Court.[4]

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the orders of the United States Bankruptcy Court for the Southern District of New York dated March 17, 2010 and May 14, 2010 issued in connection with the proof of claim of appellant Richard E. Ivers ("Ivers") in the underlying Bankruptcy proceeding are AFFIRMED, and Ivers's appeal in this action (Docket No. 1) is DENIED.

The Clerk of Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**

---

4. The Court's conclusion is further supported by the higher standard required for the Court to upset an order denying reconsideration by the Bankruptcy Court. *See Siewert v. Christy (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey),* 194 B.R. 728, 731 (S.D.N.Y.1995) ("With respect to [appellant's] appeal from the [r]econsideration [o]rder, the Bankruptcy Court's denial of reconsideration is reviewable only for abuse of discretion.").